**BRADLEY CORPORATION, Plaintiff,**

v.

**ZURICH INSURANCE COMPANY, Defendant.**

No. 96–C–737.

United States District Court, E.D. Wisconsin.

Nov. 5, 1997.

Mary K. Braza, Foley & Lardner, Milwaukee, WI, for Plaintiff.

Paul J. Pytlik, Otjen, Van Ert, Stangle, Lieb & Weir, Milwaukee, WI, for Defendant.

## DECISION AND ORDER

WARREN, District Judge.

In this diversity jurisdiction case, Bradley Corporation sues its insurer, Zurich Insurance Company, for failure to defend Bradley in a previous lawsuit tried before this Court.

Bradley, a Wisconsin corporation located in Menomonee Falls, Wisconsin, manufactures plumbing fixtures and fittings. With the assistance of its insurance broker, Rollins Hudig Hall of Wisconsin, Inc., Bradley purchased comprehensive general liability insurance from Zurich, an Illinois corporation with its principal place of business in Schaumburg, Illinois, and a satellite office in Waukesha, Wisconsin. The insurance was issued through a string of policies, each effective for a one-year period beginning and ending February 1. The policies at issue in this case were effective from February 1, 1990, through February 1, 1995.

In December 1990, Bradley hired Edna Sarafolean to work at its Menomonee Falls office. Ms. Sarafolean was a credit analyst-collector; her duties included collecting Bradley's accounts receivable and approving the shipment of orders for Bradley's fixture division. In July 1 994, Ms. Sarafolean filed a Notice of Charge of Discrimination with the Equal Employment Opportunity Commission.[1] On September 30, 1994, Ms. Sarafolean sued Bradley in federal court in this District, alleging that from December 1990

---

1. Although Zurich has presented no sufficient evidence on the matter, it appears that Bradley was notified of the EEOC charge by letter from the EEOC dated July 18, 1994.

onward Bradley had unlawfully discriminated against her on the basis of sex in violation of the Equal Pay Act, 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* Her case, *Sarafolean v. Bradley Corp.*, No. 94–C–1099, originally was assigned to the Honorable John W. Reynolds.

Ms. Sarafolean's complaint was served on Bradley on October 4, 1994. Bradley quickly hired as defense counsel the firm of Foley & Lardner, with whom Bradley had a long working relationship. Bradley answered the complaint on October 21, 1994.

Judge Reynolds conducted a scheduling conference on December 2, 1994, following which he issued a scheduling order. Ms. Sarafolean had to disclose expert witness information by March 15, 1995, Bradley had to disclose expert witness information two months later, all discovery was to be completed by June 23, 1995, and all dispositive motions were to be filed by June 30, 1995. Judge Reynolds set a pretrial conference date of September 20, 1995, and a trial date of October 3, 1995. On December 8, 1994, the Sarafolean case was reassigned to this Court, which initially kept in place all of the scheduling dates set by Judge Reynolds. On August 3, 1995, however, this Court reset the pretrial conference and trial dates to late November 1995.

Early in the litigation Bradley took the position that Ms. Sarafolean's claims were meritless. Bradley had a well publicized sexual harassment policy of which it was very proud, and because it thought the lawsuit maligned its reputation for sensitivity on sexual harassment matters, Bradley sought to clear its name by defending the case vigorously. As a result, Bradley decided not to concede to Ms. Sarafolean's demands by paying her a substantial settlement.[2]

Bradley determined during discovery that Ms. Sarafolean had extensive psychological problems. The company and its attorneys made a strategic decision to attack Ms. Sarafolean's version of events as well as her claimed damages, which required hiring private investigators to check her veracity on various matters and monitor her activities. Bradley also decided it had to expose Ms. Sarafolean's mental illness as the cause of her fabricated stories about sexual harassment, which required hiring an expert psychologist and psychiatrist, who diagnosed her as suffering from Pseudologia Fantastica, a personality disorder marked by compulsive lying. Bradley also deposed two of Ms. Sarafolean's psychiatrists, two of her therapists, and her physician, all of whom she named as experts, as well as members of Ms. Sarafolean's family.

On July 19, 1995, more than 10 months after Bradley was served with the *Sarafolean* complaint, Zurich received, from Rollins Hudig Hall, the insurance company's first notice of the lawsuit and a copy of the complaint. The next day Bradley received a facsimile from Zurich acknowledging receipt of the notice, but the transmission did not indicate whether Zurich would accept responsibility for coverage. On August 2, 1995, Attorney John R. Heitkamp of Foley & Lardner sent Zurich a second notice of the *Sarafolean* lawsuit, and instructed Zurich's claim representative to contact Foley & Lardner Attorney Susan R. Maisa for further information.

Zurich did not thereafter contact Ms. Maisa about the *Sarafolean* case. Instead, on August 23, 1995, it sent Bradley a letter denying coverage of any defense or indemnification related to the *Sarafolean* lawsuit on the grounds that the notice was untimely and that Ms. Sarafolean's claims were not covered by the policy. Rollins Hudig Hall followed up with Zurich on at least three occasions trying to convince Zurich to assume coverage or defense of the lawsuit. Zurich did not change its position.

At the time Zurich received notice of the *Sarafolean* complaint, trial was still scheduled for October 3, 1995. But although the discovery deadline had passed, the parties by mutual agreement conducted 14 depositions after the deadline, and discovery continued

---

**2.** Early in the litigation Ms. Sarafolean failed to respond to Bradley's settlement overtures. Later, Ms. Sarafolean demanded over $200,000, which Bradley never seriously considered. According to Bradley, considering the information it had discovered by that time, it was not going to pay such a substantial amount of money for what it believed were fabricated allegations.

into November. After two postponements by this Court, the case was tried to a jury from December 11–20, 1995. Bradley's strategy worked. The jury returned a verdict for Bradley on all counts.

Bradley's costs for defense of the *Sarafolean* lawsuit totaled $299,638.17. The invoices dated after the July 19, 1995, notice to Zurich totaled $232,498.55. The high cost of defending the *Sarafolean* case was largely attributable to the battle of the experts concerning the cause of Ms. Sarafolean's problems and the intense factual investigation necessary to uncover the lies Ms. Sarafolean had made over the years. To Bradley, the experts and investigators were invaluable at trial in exposing Ms. Sarafolean's fabrications.

After the successful defense of the *Sarafolean* lawsuit, Attorney Heitkamp again wrote to Zurich, requesting that it reimburse Bradley for defense costs. Zurich again denied any responsibility. Thereafter, on June 21, 1996, Bradley sued Zurich in this Court for breach of the insurance contracts and for a declaration of the rights and obligations of the parties under the insurance policies. Bradley and Zurich filed cross-motions for summary judgment, which are the cause of this Decision and Order.

### Applicable Law

As is well known, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Because the parties in this case have filed cross-motions for summary judgment, it is clear that most facts are not contested. When no genuine issue of material fact exists, the sole question is whether the moving party is entitled to judgment as a matter of law. *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir.1996).

■ Although much of this case involves uncontested language from a contract and complaint, at least one matter could involve a question of material fact. In that regard, the Court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). Nevertheless, to defeat a properly supported motion for summary judgment, the opposing party must present specific and sufficient evidence that, if believed by a jury, would support a verdict in its favor. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11. As the Supreme Court has stated and the Seventh Circuit recently reiterated, a district court resolves factual issues of controversy in favor of the nonmoving party

> ... only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint.... The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990); *Weeks v. Samsung Heavy Ind. Co.*, 126 F.3d 926, 934–35 (7th Cir.1997). "Self-serving assertions without factual support in the record will not defeat a motion for summary judgment." *Weeks*, 126 F.3d at 934.

■ As to substantive law, in a diversity jurisdiction case a federal court must apply the law of the state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Doe v. Roe No. 1*, 52 F.3d 151, 154 (7th Cir.1995). In Wisconsin, in the absence of a choice of law provision in an insurance contract, a court is to use the "grouping-of-contacts" approach for resolving conflict of law questions. The approach includes looking at the place of contracting, negotiation, and performance of the contract, the location of the insured risk, and the domicile of the parties to the agreement. *Utica Mut. Ins. Co. v. Klein & Son, Inc.*, 157 Wis.2d 552, 556–58, 460 N.W.2d 763 (Ct.App.1990). The location of the insured risk—meaning the principal location of the policyholder's insured activi-

ty—is given greater weight than any other contact. *Id.* at 559, 460 N.W.2d 763. Zurich, smartly, does not dispute that under this test Wisconsin law applies to the present lawsuit. The insurance policies, which contain no choice of law provisions, were purchased here in Wisconsin through a Wisconsin agent; the insured risk was in Wisconsin, as Ms. Sarafolean worked and allegedly experienced discrimination at Bradley's office in Menomonee Falls, and the Sarafolean lawsuit took place in Milwaukee; and representatives of Zurich's Waukesha office denied Bradley's claims for reimbursement.

■ This Court, then, must apply Wisconsin law as declared by statute, the highest state court or otherwise by the state appellate court. *Affiliated FM Ins. Co. v. Trane Co.,* 831 F.2d 153, 155 (7th Cir.1987). In Wisconsin, the duty to defend is broader than a duty of indemnification. *Elliott v. Donahue,* 169 Wis.2d 310, 320, 485 N.W.2d 403 (1992). Whether an insurer has a duty to defend is a question of law based solely on the allegations of the complaint and the terms of the insurance policies. *Newhouse by Skow v. Citizens Sec. Mut. Ins. Co.,* 176 Wis.2d 824, 833, 835, 501 N.W.2d 1 (1993). The Court looks to the four corners of the complaint to decide whether the facts alleged therein raise the *possibility* of coverage under the insurance policy. *School Dist. of Shorewood v. Wausau Ins. Cos.,* 170 Wis.2d 347, 364–65, 488 N.W.2d 82 (1992).

■ Wisconsin law heavily favors the insured in regard to the duty to defend. Words in coverage clauses are interpreted broadly to afford the greatest protection to the policyholder. *Garcia by Ladd v. Regent Ins. Co.,* 167 Wis.2d 287, 294, 481 N.W.2d 660 (Ct.App.1992). If the policy language is reasonably susceptible to more than one construction, the ambiguity must be construed strictly against the insurer. *Maas by Grant v. Ziegler,* 172 Wis.2d 70, 79, 492 N.W.2d 621 (1992). If there is a possibility of recovery on any covered claim in the complaint, an insurer must provide a defense to the entire lawsuit, even if other allegations are not covered by the insurance. *Shorewood,* 170 Wis.2d at 366, 488 N.W.2d 82.

■ In addition, the choice of legal theory stated in the tendered complaint is not determinative of the duty to defend; the question instead is "whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers." *Curtis–Universal, Inc. v. Sheboygan Emergency Med. Serv., Inc.,* 43 F.3d 1119, 1122 (7th Cir.1994) (citing *U.S. Fire Ins. Co. v. Good Humor Corp.,* 173 Wis.2d 804, 496 N.W.2d 730 (Ct.App.1993)); *see Strid v. Converse,* 111 Wis.2d 418, 422–23, 331 N.W.2d 350 (1983) ("It is the sufficiency of the facts alleged that control. What they are called is immaterial.") (internal quotation marks omitted). Moreover, the duty to defend has nothing to do with the merits of the claim. If there is a possibility of coverage for a damage award, the insurer must defend even though the allegations are groundless, false or fraudulent. *Shorewood,* 170 Wis.2d at 364, 488 N.W.2d 82. Importantly, if there is any doubt about the duty to defend, it must be resolved in favor of the insured. *Elliott,* 169 Wis.2d at 321, 485 N.W.2d 403.

■ If there is a question about the duty to defend, Wisconsin law favors a procedure by which the insurer either defends the policyholder subject to a reservation of rights or else intervenes in the underlying lawsuit and requests a bifurcated trial on the issue of coverage, moving to stay liability proceedings until the coverage matter is resolved. With these procedures, the insurer runs no risk of breaching its duty to defend. *Newhouse,* 176 Wis.2d at 836, 501 N.W.2d 1. Although the insurer is not required to follow such procedures, it declines to do so "at its peril". *Elliott,* 169 Wis.2d at 321, 485 N.W.2d 403. While an insurer may reject the tender of defense when coverage issues are fairly debatable without breaching its duty to defend if the coverage determination precedes the underlying action, the insurer must provide a defense to the insured in the underlying action if the underlying action comes before a coverage determination. *Id.* at 318, 485 N.W.2d 403; *U.S. Fire,* 173 Wis.2d at 820, 496 N.W.2d 730. In this case, although the underlying liability issue was tried before coverage was determined, Zurich did not defend Bradley. Therefore, if the coverage issue is even "fairly debatable", Zurich will

have breached its duty to defend. *U.S. Fire,* 173 Wis.2d at 820, 496 N.W.2d 730.

### Coverage Under the Policy

The parties agree that as a question of law based solely on the complaint and policy language, whether Zurich had a duty to defend Bradley is a matter properly decided upon their cross-motions for summary judgment.

The parties point to only one area of policy language that would bring the *Sarafolean* complaint within the policy's coverage:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result ...

Policies at Section I Coverage B(1)(a). The policies then define "personal injury" as injury arising out of, among other things, "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services[.]" Policies at Section V(10)(d).

In Wisconsin, the elements of a slanderous communication are: (1) a false statement, (2) communicated by speech or conduct to a third person, (3) that tends to harm one's reputation so as to lower that person in the estimation of the community or deters others from associating or dealing with the person. *Torgerson v. Journal/Sentinel, Inc.,* 210 Wis.2d 525, 535, 563 N.W.2d 472 (1997); Wis. JI–Civil 2500 (1993) and 2501 (1991). This Court thus looks to the four corners of the *Sarafolean* complaint to determine if it contains these elements; if so, or if their being pled is "fairly debatable", then regardless of the legal theories pursued by Ms. Sarafolean herself, Zurich's duty to defend was invoked.

The complaint alleges two counts, the first based on allegations that a male employee performing substantially the same duties as Ms. Sarafolean was paid more than she was. While Ms. Sarafolean did assert that her damages included humiliation and injury to reputation, it is undisputed that no other portion of the Equal Pay Act claim triggered Zurich's duty to defend. The second count of the complaint, however, stated in pertinent part (emphasis added):

> 16. Defendant has discriminated against the plaintiff on the basis of plaintiff's sex ... by subjecting the plaintiff to a hostile work environment over a continuous period of time, including but not limited to *repeated sexual remarks, sexually intimidating language, improper sexual gestures and improper physical and sexual contact.* Such conduct was perpetrated by ... a male co-worker. *Some of such conduct was observed by* and made known to *the plaintiff's supervisor or other management employees,* who failed to take the necessary action to terminate such conduct.
>
> 17. As a result of the defendant's action, the *plaintiff has suffered and will continue to suffer ... humiliation and injury to reputation.*

The Court finds it at least fairly debatable that the allegations underlined above assert all parts of a slander claim, bringing the *Sarafolean* complaint under the coverage of the policies at issue in this case and triggering Zurich's duty to defend Bradley in the *Sarafolean* lawsuit. Taking the elements in reverse order, the allegation of harm to Ms. Sarafolean's reputation was clearly stated. Next, the allegation that Ms. Sarafolean's supervisor and other employees overheard language of a sexual or sexually intimidating nature meets the publication element. If a speaker intentionally or negligently allows others to hear the comments and the communication identified the person defamed expressly or by reasonable inference, the element is satisfied. *Ranous v. Hughes,* 30 Wis.2d 452, 461–62, 141 N.W.2d 251 (1966); Wis. JI–Civil 2500. Such is the case as alleged by Ms. Sarafolean.

The final element, although completely ignored by Bradley, is the closest call. Nowhere in Ms. Sarafolean's complaint does she actually assert that the sexual remarks or sexually intimidating language directed towards her were untrue. But reading the allegations of such communication in context,

and giving the benefit of the doubt to the policyholder as it must, this Court believes that the falsity of the sexual remarks or sexually intimidating language obviously is implied by Ms. Sarafolean. *See Curtis–Universal,* 43 F.3d at 1123 ("we must decide whether facts alleged *or implied* by the claim of tortious interference ... constitute 'unfair competition' within the meaning of the insurance contract") (emphasis added). Ms. Sarafolean's complaint states that the alleged comments created a "hostile work environment," that certain comments were "intimidating," and that related sexual gestures and contact were "improper." Such characteristics would be far less likely if the communications were true, as would resulting humiliation and injury to reputation. Also, Ms. Sarafolean claimed the communications were "oppressive and/or were taken with indifference to the rights of the plaintiff," which also would be less likely if the communications were true. Ms. Sarafolean did not explicitly allege falsity of the statements because she did not have to for purposes of her legal theory, as certain statements may be considered sex discrimination regardless of whether they are true or false. But this Court thinks the falsity of the statements is implied, as it is in many sex discrimination cases. This Court recognizes that it is a close call, but again any doubt must be resolved in the insured's favor. As a result, the Court finds it at least fairly debatable that the false statement element was asserted for purposes of Zurich's duty to defend. *See Duff Supply Co. v. Crum & Forster Ins. Co.,* No. 96–8481, 1997 WL 255483 (E.D.Pa. May 8, 1997) (sex discrimination claim involving employee being called "f——ing bitch" considered defamation).

Moreover, Section V(10)(d) of the insurance policy refers to disparagement of a person's goods, products or services. "Disparage" means to degrade or "lower in esteem or reputation". Webster's Third New International Dictionary Unabridged 653 (1976). Ms. Sarafolean claimed she was subjected to sexually intimidating language while at work. The Court also finds fairly debatable whether that allegation constitutes disparagement of Ms. Sarafolean's "services", i.e. her work for Bradley.

In sum, the *Sarafolean* complaint sufficiently (or at least fairly debatably) alleged a slander or disparagement claim such that Zurich had a duty to defend Bradley in that case under the policies covering the period February 1, 1990 through February 1, 1995. And because the coverage issue was not decided prior to the underlying liability issue, Zurich had a duty to defend Bradley in the *Sarafolean* lawsuit. It did not, and therefore breached its duty.

The Court's determination is supported by the case of *Towne Realty, Inc. v. Zurich Insurance Co.,* 193 Wis.2d 544, 534 N.W.2d 886 (Ct.App.1995), *rev'd on other grounds,* 201 Wis.2d 260, 548 N.W.2d 64 (1996), in which Zurich itself was found to have breached its duty to defend based on policy language identical to that involved in this case and a complaint construed to allege slander. In *Towne Realty,* the policyholder had been sued on a complaint alleging it had

> conspired to deprive plaintiffs of the opportunity to engage in their chosen professions at the Riverside Theatre. As a direct and proximate result of the actions of defendants, the business and personal reputations of plaintiffs have been so seriously maligned that plaintiffs reasonably believe they are precluded from engaging in their chosen professions ...

*Towne Realty,* 193 Wis.2d at 551, 534 N.W.2d 886. The Court of Appeals found that this allegation constituted slander under the same Coverage B(1)(a) and Section V(10)(d) sections as are at issue in this case: "[W]hile the ... complaint did not expressly state a claim for libel or slander, the implication of this allegation is that Towne published false or misleading statements about them that caused damage to their reputation." *Id.* at 555, 534 N.W.2d 886. While Ms. Sarafolean did not use so potent a word as "maligned" to describe Bradley's alleged conduct, the Court of Appeals read the identical contractual language extremely broadly and found a duty to defend. The similarities between this case and *Towne Realty* are too great for this Court to decide otherwise. Moreover, *Towne Realty* was decided April 18, 1995, *id.* at 544, 534 N.W.2d 886, and Zurich received notice of the *Sarafolean* complaint just three

months later. *Towne Realty* itself should have alerted Zurich that coverage of the *Sarafolean* complaint under identical language as that discussed by the Court of Appeals was fairly debatable.

As it did in *Towne Realty,* Zurich relies on *Nichols v. American Employers Insurance Co.,* 140 Wis.2d 743, 412 N.W.2d 547 (Ct.App. 1987), to contend that the *Sarafolean* complaint did not state a claim within the policies' definition of "personal injury." *Nichols* involved an insured's attempt to fit gender discrimination claims under a policy's personal injury/defamation clause. In deciding the insurer had no duty to defend, the Court of Appeals stated that the policy "contemplat[ed] defense of defamation suits, not suits claiming damages where a defamatory statement may be involved." *Id.* at 750, 412 N.W.2d 547. Like the *Towne Realty* court, this Court is not persuaded. *Nichols* indicates that the complaints in that case failed to relate all the elements of a defamation claim: "In fact, the complaints are devoid of any statements that could be considered an allegation of defamation." *Nichols,* 140 Wis.2d at 746–47, 412 N.W.2d 547. The *Towne Realty* court itself distinguished *Nichols* because the complaint tendered by *Towne Realty* made an allegation reasonably construed as a claim for libel, slander or disparagement of services:

> As we previously concluded, the gravamen of paragraph 63 of the [plaintiffs'] complaint is that their personal and business reputations were maligned as a result of Towne's actions. Damage to one's reputation is the essence of a cause of action for libel and slander. Thus, unlike *Nichols,* the [plaintiffs'] allegation that they were maligned and that their reputations were damaged was sufficient to fall within the definition of "personal injury" as defined by the Zurich policy.

*Towne Realty,* 193 Wis.2d at 557, 534 N.W.2d 886. The *Nichols* court's gratuitous comments about needing a specific claim for defamation to trigger the duty to defend based on a policy's coverage for slander are contrary to the rule of *Strid* that the labels used are immaterial. Moreover, those comments were impliedly disregarded by the *Towne Realty* court. As the more recent pronouncement of the Court of Appeals, *Towne*

*Realty* has greater weight than *Nichols* for current purposes.

Zurich also argues that Bradley, by focusing on the allegation of injury to Ms. Sarafolean's reputation, is attempting to replace the specific type of offense covered by the policies (i.e. defamation) with a broader type of harm (i.e. injury to reputation). Because this Court finds that all elements of a slander claim were indeed alleged by Ms. Sarafolean, that is not the case.

Zurich further argues that the *Sarafolean* complaint fails to state a slander claim because Ms. Sarafolean did not set forth specific statements causing her harm. Wisconsin Statute § 802.03(6) does require that a claim for slander set forth "the particular words complained of". But again, Ms. Sarafolean was asserting a sex discrimination claim rather than an actual slander claim. While pleading requirements for a slander claim may involve more specificity on the defamatory statements in order to survive a motion to dismiss, this Court does not believe Ms. Sarafolean's complaint fails to state a slander claim for purposes of Zurich's duty to defend. (If that were the case, the insured in *Towne Realty* could not have prevailed.) Ms. Sarafolean alleged that impliedly-false statements were made and published, which is all that is required for purposes of the *substance* of a slander claim. Failure to state the claim in the *form* required by law would be a matter for the insurer, having accepted its duty to defend the case, to raise in a motion to dismiss.

### *Notice to Zurich*

All the insurance policies contained identical language requiring notice to Zurich "as soon as practicable" after a potentially covered incident occurred. Policies at Section IV(2)(a). If an actual claim or lawsuit was brought, however, the contractual requirements upon Bradley were more stringent; in addition to written notice, Bradley was supposed to "[i]mmediately send [Zurich] copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit'..." Policies at Section IV(2). Further, the polices stated that "[n]o insureds will, except at their own cost, voluntarily ...

incur any expense ... without our consent." *Id.* at IV(2)(d).

The undisputed facts show that Bradley failed to notify Zurich or deliver to the insurer a copy of the *Sarafolean* complaint for over 9 months after Bradley was served. Instead, Bradley went ahead and incurred legal, investigative, and expert witness expenses without Zurich's consent. Interestingly, Bradley completely fails to explain what took it so long or argue that the 9–month period was "as soon as practicable," let alone "immediate". Under the terms of the policies themselves, Bradley might lose any coverage for defense of the *Sarafolean* lawsuit based on its failure to notify Zurich in a timely manner.

Luckily for Bradley, the policy language is amended by Wisconsin Statutes §§ 631.81(1) and 632.26(2), which are incorporated into the insurance contracts by operation of law. *Garcia,* 167 Wis.2d at 303, 481 N.W.2d 660; *Leverence v. United States Fidelity & Guar.,* 158 Wis.2d 64, 74 n. 2, 462 N.W.2d 218 (Ct.App.1990). Section 631.81(1) states:

> Provided notice or proof of loss is furnished as soon as reasonably possible and within one year after the time it was required by the policy, failure to furnish such notice or proof within the time required by the policy does not invalidate or reduce a claim unless the insurer is prejudiced thereby and it was reasonably possible to meet the time limit.

The undisputed evidence shows Bradley did indeed give Zurich notice of the *Sarafolean* lawsuit within one year of service of the complaint and summons[3] But completely overlooked by the parties, Bradley has provided no evidence at all that its 9–month delay was "as soon as reasonably possible." It thus does not meet all of the required elements of section 631.81(1).

■ The error is not fatal, however. What Bradley should have pointed to is section 632.26(2), under which even unreasonably late notice bars liability insurance coverage only if the insurer suffered prejudice as a result. Wis. Stat. § 632.26(2); *Maryland Cas. Co. v. Wausau Chemical Corp.,* 809 F.Supp. 680, 694 (W.D.Wis.1992).[4]

■ Generally the determination of prejudice regarding untimely notice is a question of fact for the jury. *See City of Edgerton v. General Cas. Co.,* 172 Wis.2d 518, 556–57, 493 N.W.2d 768 (Ct.App.1992), *rev'd on other grounds,* 184 Wis.2d 750, 517 N.W.2d 463 (1994). But if either party fails to meet its initial burden and to rebut the opponent's evidence on the matter, summary judgment nevertheless is appropriate. Such is the case here.

■ Bradley has met its initial burden of showing that the 9–month delay in providing notice did not prejudice Zurich. First, obviously, Zurich was not prejudiced by the result of the *Sarafolean* lawsuit, as Bradley successfully defended the case. Because Zurich escaped any liability to a third party, the only possible prejudice would have been re-

---

**3.** Zurich does not contend that because the EEOC notice was dated July 18, 1 994, Bradley crossed the one-year threshold. In its brief, Zurich focuses only on the complaint and summons, stating that "[s]ince notice of the Sarafolean complaint and suit were given to Zurich within 1 year of the date Bradley was given notice, Zurich will have to establish actual prejudice as a matter of law." Zurich's Brief in Support (Jan. 31, 1997) at 13. In any event, no acceptable evidence regarding the date of the EEOC's notice was provided to the Court, and it is likely Bradley did not receive the EEOC notice on the date of the letter. Therefore, Bradley's notice to Zurich fell within one year of the EEOC notice as well.

**4.** The difference in statutes does, however, affect who ultimately must sway the finder of fact. Under section 631.81(1), if notice is given within a reasonable time and within one year of the date required by the contract, the burden of proof lies on the insurer to prove prejudice and that it was reasonably possible for the policyholder to give notice within the time limit required in the policy. *Gerrard Realty Corp. v. American States Ins. Co.,* 89 Wis.2d 130, 146, 277 N.W.2d 863 (1979). Section 632.26(2) states that failure to give notice as soon as reasonably possible "does not bar liability under the policy if the insurer was not prejudiced by the failure, but the risk of nonpersuasion is upon the person claiming there was no prejudice." For current purposes, this difference is immaterial. While the two provisions determine who wins when the totality of evidence is inconclusive, they do not tip the scale one way or the other at the summary judgment stage, where the movant bears the burden of going forward. *City of Edgerton v. General Cas. Co.,* 172 Wis.2d 518, 557–58, 493 N.W.2d 768 (Ct.App.1992), *rev'd on other grounds,* 184 Wis.2d 750, 517 N.W.2d 463 (1994).

garding the costs of defense. In other words, with the jury verdict in Bradley's favor, Zurich cannot now argue it would have used more effective counsel or better case strategy, but only less expensive.

One way of limiting defense costs might have been to settle the case before trial. *But see American Mut. Liab. Ins. Co. v. Beatrice Cos.*, 924 F.Supp. 861, 871 (N.D.Ill.1996) ("where insurer is not called upon to indemnify for damages, it cannot claim as prejudice that it was unable.. to settle a claim for a lower amount"). Bradley, however, has proffered evidence that Ms. Sarafolean failed to respond to Bradley's early settlement overtures. Later, Ms. Sarafolean demanded over $200,000, an amount close to the total Zurich now is asked to pay. In any event, according to the affidavits of Bradley's attorneys, after receiving notice of the *Sarafolean* matter, Zurich never even contacted them about the status of settlement talks. Bradley thus has shown evidence that Zurich was not prejudiced through an inability to negotiate a settlement for less than the total costs of defense.

Another method of reducing the costs of defense might have been to use less costly methods of discovery. But according to the affidavits of Bradley's attorneys, investigators and experts were essential to Bradley's successful defense. Moreover, the attorneys state that Zurich never even contacted them to inquire about the status of discovery. If Zurich had done so, it would have learned that discovery proceeded even after the cutoff date. And upon the postponement of the *Sarafolean* trial by this Court—which occurred prior to Zurich's denial of its defense duties—Zurich had two full extra months to get involved in the defense of the case, yet it did not. Bradley thus has shown that Zurich cannot have been prejudiced when it had the opportunity to participate in the methods of discovery and case strategy but failed to do so.

The affidavits of Bradley's Senior Vice President John C. Kleczka III and the Foley & Lardner attorneys indicate that after receiving notice of the *Sarafolean* complaint Zurich never inquired at all regarding how the case was progressing. It denied coverage in its August 23, 1995, letter without investigation and then did nothing further on the matter. Bradley thus has provided *prima facie* proof that Zurich was not interested in becoming involved in the case at all and therefore suffered no prejudice based on the timing of notice.

In rebuttal to Bradley's evidence and in support of its own motion for summary judgment, Zurich provides this Court with no satisfactory evidence that it was prejudiced. As its proof Zurich points to the chronological delay in notice and the short period of time between Zurich's receipt of that notice and the October 3, 1995, trial date. According to Zurich, because discovery was already scheduled as closed, experts were already named, and the trial date was less than two months away, it was "effectively precluded" from bifurcating the coverage and liability issues, perhaps settling the case, and being involved in the defense. According to Zurich, its right to select counsel also was impinged, as it was impractical to substitute counsel two months before a scheduled trial date. As a result, Zurich believes the late notice and "its attendant prejudice" absolve Zurich of responsibility to pay for Bradley's' defense costs in the *Sarafolean* case.

█ But mere delay in giving notice does not mean the insured automatically loses its coverage; the insurer must in fact be prejudiced in some fashion by the delayed notice. *Valley Bancorporation v. Auto Owners Ins. Co.*, 212 Wis.2d 609, 569 N.W.2d 345, 350–51 (Ct.App.1997). Conspicuously absent is any real evidence from Zurich indicating how it was in fact prejudiced by the delayed notice. There is no evidence that Zurich is liable for paying any judgment or settlement under the policies. There is no evidence that Zurich lacked sufficient opportunity to investigate the claim. There is no evidence that Zurich lacked the opportunity to negotiate a settlement.

The nail in Zurich's coffin is the bifurcation issue. Zurich never even attempted to intervene in the *Sarafolean* lawsuit and request bifurcation of the coverage and liability matters as it should have under Wisconsin law. If it had tried to intervene and have the coverage issue determined first, but had been denied by this Court, perhaps it could show prejudice. But it did not. According

to Zurich, "[u]ndoubtedly the plaintiff, the court and probably the insured would object to a stay of the proceedings at a point in time where discovery and motion practice was scheduled to be completed and the trial date was approaching." What this Court would have decided at the time is now pure speculation, and such speculation is not evidence of actual prejudice. Zurich contends that the bifurcation and stay procedures are "typically invoked at the commencement of litigation" when the insurer is provided with notice of a lawsuit. Zurich Response Brief at 4–5. Whether these procedures are "typically" invoked at the time a lawsuit is filed is irrelevant. To prevail in this matter, Zurich must show that Zurich itself was prevented from doing so in the *Sarafolean* case. Never having even tried to intervene, and presenting no evidence that in the late summer and early fall of 1995 it even considered making such a move, Zurich's claim of prejudice rings hollow.

Other than the time line itself, Zurich's only proffered evidence of prejudice comes from an affidavit of Joseph D. McDevitt, an attorney practicing in Wisconsin since 1968. Mr. McDevitt was asked by Zurich to review the initial summary judgment briefs and affidavits in this case and render his opinion as to whether Zurich was prejudiced. After noting that Wisconsin law indicates an insurer should seek bifurcation of coverage and liability proceedings, Mr. McDevitt indicates that at the point Zurich was notified of the *Sarafolean* case,

> it is your affiant's opinion that it was obviously well beyond the time frame in which that approach would be successful by reason of the fact there was a rapidly approaching trial date and a good portion, if not all, of the discovery had already been completed by the attorneys retained by Bradley Corporation. Those attorneys had apparently been working on the file for a period of about 10 months from the date of the filing of the lawsuit until the tender of defense and over a year from the date of the EEOC complaint. Because Zurich was precluded from following the recommended procedure regarding coverage by reason of the delayed tender, they were in my opinion prejudiced.

As this Court previously noted, general averments do not embrace the "specific facts" needed to sustain a case; the object of rule 56 is not to replace conclusory allegations of a complaint or answer with conclusory allegations of an affidavit. *Lujan,* 497 U.S. at 888, 110 S.Ct. at 3188–89; *Weeks,* 126 F.3d at 934–35. Mr. McDevitt's opinion merely sets forth general conclusions, not factual evidence of prejudice to prevent summary judgment from being entered against Zurich. Moreover, he reviewed nothing more—in fact he reviewed *less*—than what this Court has reviewed in deciding these motions. His affidavit is insufficient evidence on the matter of prejudice.

Zurich's lack of prejudice is illustrated by its own August 23 letter denying coverage, in which its representatives state (emphasis added) that the "late notice ... *would have prejudiced* Zurich Insurance Company's rights to conduct and control the defense of this claim," and "a delay of nine months would appear to be well beyond any reasonable time period.". These are averments based upon mere guessing. Missing are any statements saying how actual prejudice occurred. Zurich similarly claims in its summary judgment brief that it "could have" moved to intervene, "could have" selected its own counsel, or "could have" managed the lawsuit in an orderly fashion. Zurich's Brief in Support (Jan. 31, 1997) at 15–16. But it submits no evidence of any kind that it could not have done those things in July 1995 or that it in fact was prevented from so doing.

Zurich fails even to present any evidence proving that it would have investigated or participated in the *Sarafolean* matter had it been notified earlier. It now cannot be heard to argue that prompter notice would have caused it to act differently. *See Maryland Cas Co.,* 809 F.Supp. at 695 (where insurers limited their efforts to denying coverage, giving no indication they would investigate or participate in settlement negotiations, they could not argue that prompter notice would have cause them to act differently).

For the above reasons, the Court finds Bradley has met its burden on summary judgment of showing Zurich was not preju-

diced by any failure to provide timely notice under the terms of the contract, that Zurich's claim of prejudice is unsupported by any factual evidence, and that based upon Wisconsin Statute § 632.26(2), Zurich cannot escape from the finding that it breached its duty to defend. Summary judgment in favor of Bradley is appropriate on the matter.

### Damages

■ If an insurance company wrongfully refuses to defend a claim without determining whether it is required to do so, it may be held "liable to the insured for all damages that naturally flow from the breach". *Newhouse,* 176 Wis.2d at 837, 501 N.W.2d 1. Such damages include (1) the amount of any judgment or settlement, (2) costs and attorneys' fees incurred by the insured in defending the suit, and (3) any additional costs that the insured can show naturally resulted from the breach. *Id.* at 838, 501 N.W.2d 1. The insurance company must pay damages necessary to put the insured in the same position it would have been in had the insurance company fulfilled the insurance contract. *Id.* Additional costs resulting from the ˙breach therefore include reasonable attorneys' fees incurred by the insured in establishing coverage. *Elliott,* 169 Wis.2d at 322, 324, 485 N.W.2d 403.

Bradley has provided evidence that its expenditures in defense of the *Sarafolean* lawsuit were reasonable and necessary. Bradley obviously won the case, and the affidavits of the Foley & Lardner attorneys indicate reasonable rates were charged, a reasonable number of attorneys worked on the file, and the experts and investigators were essential to the successful defense of Ms. Sarafolean's charges. Zurich has presented no evidence—or even argument—to the contrary, but instead contends that summary judgment in regard to damages is premature because "no discovery has been initiated" on that matter, Bradley has submitted no detailed billing records in support of its summary judgment motion, and Zurich did not retain an expert to review the reasonableness and necessity of the fees. The hour for discovery of billing records and fees has long passed, and the onus was on Zurich to request those items. It is now too late. Specific billing records did not have to be attached to the summary judgment documents; Bradley's affidavits on the matter are sufficient. Those affidavits establish a *prima facie* case for summary judgment on the reasonableness of defense costs. Zurich has responded with nothing to the contrary.

■ The undisputed evidence before this Court indicates that Bradley's costs of defense totaled $299,638.17. The Wisconsin Supreme Court, however, has limited an insurer's liability for the costs of defense of an underlying lawsuit to those costs arising after the insurer received notice. *Towne Realty, Inc. v. Zurich Ins. Co.,* 201 Wis.2d 260, 271, 548 N.W.2d 64 (1996). Bradley's recovery, therefore, is limited to costs of defense incurred after Zurich received notice on July 19, 1995. The undisputed evidence before this Court indicates Bradley's post-notice costs of defense in the *Sarafolean* lawsuit totaled $232,498.55. Therefore, summary judgment in Bradley's favor is appropriate to the tune of $232,498.55.

■ Bradley also is entitled to interest on the amount Zurich owes for Bradley's defense of the *Sarafolean* lawsuit. *U.S. Fire,* 173 Wis.2d at 832–36, 496 N.W.2d 730. Bradley contends that the interest rate should be 12% per annum based on Wisconsin Statute § 628.46, which provides for such a rate on overdue insurance payments. Interest pursuant to section 628.46 will not accrue, however, when the insurer has reasonable proof to establish that it is not responsible for payment. *Id.* In *U.S. Fire,* the Wisconsin Court of Appeals agreed that an insurer had reasonable proof there was no coverage under the policy because of the complexities of the case and the lack of Wisconsin law on the issue. Accordingly, the insurer was permitted to litigate the matter "without facing prejudgment interest". *U.S. Fire,* 173 Wis.2d at 835–36, 496 N.W.2d 730. Bradley believes that unlike the *U.S. Fire* situation, the 12% rate is applicable here because the issues were not complex, there is Wisconsin law on point, and the insured was forced to initiate the coverage determination. The Court, however, believes that although the issues in this coverage dispute are not intricate, the Wisconsin law on point is somewhat contradictory and gave Zurich just

enough "reasonable proof" to argue that the *Sarafolean* lawsuit was not covered by the policies. While Bradley could rely on the Wisconsin Court of Appeals's Towne *Realty* case, Zurich could rely on the same court's Nichols case. The Wisconsin Supreme Court has not addressed any seeming conflict between the two cases. As a result, based upon Nichols, Zurich was reasonably justified in thinking it did not insure against a *Sarafolean*-type matter.

▪ Under Wisconsin common law, prejudgment interest at the legal rate of 5% should be awarded when the amount owed is readily determinable. *U.S. Fire*, 173 Wis.2d at 833, 496 N.W.2d 730. Attorneys' fees and defense costs become determinable as soon as they are incurred. *Id.* at 834, 496 N.W.2d 730. Bradley's total post-notice costs of defense—i.e. the $232,498.55—therefore were readily determinable at the end of the *Sarafolean* case and Bradley is entitled to interest at the 5% rate.

▪ Bradley has suggested that the date from which interest should accrue was the date of the jury verdict and judgment in *Sarafolean*, December 21, 1995. While Zurich does not dispute the use of that date, the Court disagrees. Liquidable damages for breach of contract bear interest only from the time of demand. *U.S. Fire*, 173 Wis.2d at 834, 496 N.W.2d 730. The date of Bradley's first demand on Zurich to defend the *Sarafolean* case does not count, because at that time there were no post-notice liquidable damages. *See id.* (in case where insurers declined tender of lawsuit and insured defended itself, insured's first demand for purposes of the interest rate determination came with the filing of its counterclaim against insurers, not at tender of defense). And while it is true that after Zurich's August 23, 1995, denial letter Bradley made several follow-up demands on Zurich regarding defense of the *Sarafolean* case, only portions of the costs of defense were liquidable at the time of each of those demands. A concurrence of the total determinable amount and a demand upon Zurich does not appear to have occurred until after the successful defense of the *Sarafolean* case when John R. Heitkamp of Foley & Lardner requested in writing that Zurich reimburse Bradley. The date of that letter is not before the Court, however. So,

although the parties do not dispute the date on which interest accrual should commence, the Court cannot, in accordance with law, use the December 21, 1995, date. As a result, the Court cannot at this time order summary judgment regarding the exact calculation of interest. Further proceedings on that matter are necessary.

### Conclusion

**ACCORDINGLY, IT IS ORDERED** that except in regard to the matter of prejudgment interest, Bradley's motion for summary judgment is **GRANTED** in its entirety. Zurich's cross-motion for summary judgment is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that the parties shall each address the matter of the calculation of prejudgment interest, specifically the date from which interest at 5% should accrue, through a supplemental brief of no more than 10 pages. Both parties' briefs are due 14 days after the date of this Decision and Order. Upon receipt of the supplemental briefs the Court will determine whether any hearing on the matter is necessary.