504 S.E.2d 911

**Joe D. BUTTS, Appellee,**

v.

**ROYAL VENDORS, INC. and Eric Ingersoll, Defendants Below,**

**Royal Vendors, Inc., Appellant,**

**Aetna Insurance Company, Intervenor/Appellee.**

No. 24743.

Supreme Court of Appeals of West Virginia.

Submitted June 9, 1998.

Decided July 2, 1998.

Harley O. Staggers, Jr., Staggers & Staggers, Paul E. Lane, Martinsburg, for Joe D. Butts.

Michael D. Lorensen, Bowles, Rice, McDavid, Graff & Love, Martinsburg, for Royal Vendors, Inc.

Mary H. Sanders, James C. Stebbins, Huddleston, Bolen, Beatty, Porter & Copen, Charleston, for Aetna Insurance Co.

PER CURIAM:[1]

Appellant Royal Vendors, Inc. seeks a reversal of the order of the Circuit Court of Jefferson County entered on March 21, 1997, finding that its commercial liability insurer, Aetna Insurance Company ("Aetna"), has no duty to indemnify and defend it in connection with a civil action brought against it by former employee Joe D. Butts. Upon examination of this issue, we determine that the lower court erred as to Aetna's duty to defend under that part of the commercial general liability policy which provides coverage for personal injuries arising from the publication of libel or slander, but we affirm the lower court in its ruling that Aetna had no duty to defend under the policy provision pertaining to privacy violations.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 2, 1994, Mr. Butts informed his employer, Royal Vendors, that he was required to serve a twenty-seven day sentence for aggravated assault. Later that same

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

month on April 26, 1994, Mr. Butts injured his knee while at work. He filed a workers' compensation claim in connection with the injury, which was ruled compensable on May 17, 1994. Mr. Butts had knee surgery on June 30, 1994, performed by his treating physician, Dr. Ingersoll.

During the period of time that Mr. Butts was on workers' compensation disability, a managerial employee of Royal Vendors, Ron Michael, observed Mr. Butts at a local bar and allegedly overheard certain statements. According to a handwritten document prepared by Mr. Michael, those statements were "that he [Mr. Butts] had it made; that he was on workmen's comp. making good money just doing what he wanted to do." Mr. Michael represented additionally that when Mr. Butts saw Mr. Michael at the bar, Mr. Butts reportedly "turned white as a ghost and said ... I had my operation and I feel good and I am boared [sic] sitting around the house but I can't talk my doctor in to [sic] letting me come back to work."

Mr. Butts alleges that Royal Vendors engaged in ex parte communications with Dr. Ingersoll that included the making of false statements concerning Mr. Butts' ability to return to work. The purported false statements concern the comments that Mr. Michael allegedly overheard Mr. Butts make while in the bar. After an alleged oral communication with Royal Vendors on July 14, 1994, Dr. Ingersoll determined that Mr. Butts was physically able to return to work.[2] On July 18, 1994, Dr. Ingersoll filed a formal recommendation that Mr. Butts was able to return to work. Since Mr. Butts was serving his criminal sentence and was unable to return to work at this time,[3] Royal Vendors

terminated him from its employ as of August 30, 1994.

Mr. Butts filed a civil action against Royal Vendors on December 15, 1995, alleging wrongful discharge and wrongful inducement of Dr. Ingersoll to breach the fiduciary duty owed to him as a patient.[4] By agreement of the parties and approval of the circuit court, Aetna was permitted to intervene in the litigation as the issuer of a commercial general liability policy of insurance to Royal Vendors.

Aetna filed a motion for declaratory judgment on May 1, 1996, seeking a ruling that it was not required to provide a defense under the general liability policy issued to Royal Vendors. With regard to the wrongful discharge claim, Aetna argued that coverage was not available because Mr. Butts had failed to allege either an "occurrence" or a "bodily injury" within the meaning of the policy.[5] As to the second count of the complaint—that Royal Vendors induced Dr. Ingersoll to breach a fiduciary duty owed to Mr. Butts—Aetna argued that Mr. Butts had not alleged a personal injury sufficient to invoke coverage under the Personal and Advertising Injury section of the policy.

On March 21, 1997, Judge Wilkes granted Aetna's motion for declaratory judgment first on the grounds that Mr. Butts had not alleged "bodily injury" or "property damage" caused by an "occurrence" to come within the liability section of the policy.[6] Second, the circuit court found that there was no coverage under the "Personal and Advertising Injury" section of the policy "for the reasons stated in Aetna's declaratory judgment motion and its response to Royal Vendors' reply to its motion."[7] Royal Vendors seeks a re-

2. The workers' compensation file on Mr. Butts was closed on August 30, 1994, for lack of evidence that he was entitled to further benefits.

3. At the request of Royal Vendors, Mr. Butts was serving his sentence for the assault conviction while he was on temporary disability for his knee problems.

4. On May 5, 1997, Mr. Butts filed an amended complaint to add a statutory claim under West Virginia Code § 23–5A–1 (1994) for terminating an employee for filing a workers' compensation claim.

5. On appeal, Royal Vendors does not challenge the denial of coverage with regard to the wrong-

ful discharge claim. Royal Vendors challenges Aetna's obligation to defend only as to the part of Mr. Butts' claim that pertains to allegations concerning its wrongful inducement of Dr. Ingersoll to breach the fiduciary duty he owed to Mr. Butts as his patient.

6. Royal Vendors does not appeal this part of the lower court's ruling.

7. The reasons cited by Royal Vendors were primarily the absence of any claims within Mr. Butts' complaint that could be construed to invoke coverage under the policy definitions of what constitutes a "personal injury."

versal of the lower court's ruling that Aetna had no obligation to defend or indemnify Royal Vendors from the claims filed by Mr. Butts under the provisions of the Personal and Advertising Injury section of the policy.

## II. DISCUSSION

In *Silk v. Flat Top Construction, Inc.*, 192 W.Va. 522, 453 S.E.2d 356 (1994), we recently "discuss[ed] when an insurance carrier has the duty to defend an insured. Concededly, an insurer must meet a rigorous standard to avoid its obligation to defend.

"As a general rule, an insurer's duty to defend is tested by whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy. *See generally* 7C J. Appleman, [*Insurance Law and Practice*] § 4683 [ (Berdal ed.1979) ]; 14 G. Couch, [*Cyclopedia of Insurance Law* ] § 51.42 [ (2nd ed.1982) ]; 44 Am.Jur.2d *Insurance* § 1539 (1969); Annot., 50 A.L.R.2d 458 (1956). 'There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage.' . . .

"Furthermore, it is generally recognized that the duty to defend an insured may be broader than the obligation to pay under a particular policy. This ordinarily arises by virtue·of language in the ordinary liability policy that obligates the insurer to defend even though the suit is groundless, false, or fraudulent." *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W.Va. 190, 194, 342 S.E.2d 156, 160 (1986).

192 W.Va. at 525, 453 S.E.2d at 359 (some citations omitted); *accord Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 376 S.E.2d 581 (1988).[8]

The policy language that Royal Vendors looks to for coverage provides as follows:

We [Aetna] will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies.

"Personal injury" is defined as follows:

10. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

. . . .

(d) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

(e) Oral or written publication of material that violates a person's right of privacy.

We will separately examine sections (d) and (e) of the Personal and Advertising Injury section of the policy. Section (d) concerns "[o]ral or written publication of material that slanders or libels a person." Aetna's position with regard to this policy language is, in essence, because Mr. Butts did not assert an actual cause for slander or libel within his complaint there can be no coverage under this section. In support of this position, Aetna cites *Nichols v. American Employers Insurance Co.*, 140 Wis.2d 743, 412 N.W.2d 547 (Ct.App.1987),[9] in which an employer accused of sexual harassment sought coverage

---

**8.** In *Horace Mann,* we articulated these generally applicable tenets of insurance law as follows:

First, any ambiguity in the language of an insurance policy is to be construed liberally in favor of the insured, as the policy was prepared exclusively by the insurer. This principle applies to policy language on the insurer's duty to defend the insured, as well as to policy language on the insurer's duty to pay. Second, the duty of an insurer to defend an insured is generally broader than the obligation to provide coverage, that is, to pay a third party or to indemnify the insured, in light of the language in the typical liability policy which obligates the insurer to defend even though the suit is groundless, false or fraudulent. Third, an insurer's duty to defend is normally tested by whether the allegations in the complaint against the insured are reason-

ably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy. Consequently, there is no requirement that the facts alleged in the complaint against the insured specifically and unequivocally delineate a claim which, if proved, would be within the insurance coverage. 180 W.Va. at 378, 376 S.E.2d at 584 (footnote omitted).

**9.** The additional cases cited by Aetna either cite *Nichols*, which as discussed *infra* is of little precedential value within its own issuing jurisdiction, or as in *Microtec Research v. Nationwide Mutual Insurance Co.*, 40 F.3d 968 (9th Cir.1994), the libel/slander policy provision was deemed inapplicable due to the absence of false statements necessary to invoke such policy provisions. *Id.* at 972.

under a personal injury policy provision providing coverage for libel or slander based on the inclusion of an alleged defamatory statement as part of the harassment claim. Rejecting application of coverage in that case, the Wisconsin court reasoned that "the simple fact that a defamatory statement is part of a proceeding does not bring the case within the insurance coverage" when "the nature of the claim was not a defamation action[.]" *Id.* at 551. Significantly, the reasoning employed in *Nichols* that the insurance provisions at issue only "contemplat[e] defense of defamation suits, [and] not suits claiming damages where a defamatory statement may be involved" has been expressly distinguished or rejected outright by subsequent rulings of both the same Wisconsin appellate court that issued *Nichols* and a Wisconsin federal district court. *Id.* at 550.

In *Towne Realty, Inc. v. Zurich Insurance Co.,* 193 Wis.2d 544, 534 N.W.2d 886 (Ct.App. 1995), the Wisconsin Court of Appeals considered whether an insurer breached its duty to defend under a commercial general liability policy where the complaint alleged that third parties' reputations were "maligned" by their insured's conduct. The court concluded that "while the Balestrieris' complaint did not expressly state a claim for libel or slander, the implication of this allegation [referring to the alleged malignment] is that Towne published false or misleading statements about them that caused damage to their reputation." *Id.* at 891. The court explained:

> The Balestrieris' allegation that they could no longer engage in their chosen profession, taken in conjunction with their allegation that they were maligned by Towne, suggests that Towne disparaged the Balestrieris' services. Accordingly, the Balestrieris' allegation was sufficiently broad to suggest a claim within the policy's definition of "personal injury." Because we are required to resolve all doubts concerning coverage in favor of the insured, we conclude that Zurich had an obligation to defend Towne, at least until the nature of the claim could be otherwise determined.

*Id.* The court in *Towne Realty* determined that the plaintiffs' complaint, in contrast to the facts of *Nichols,* did state a claim for a "personal injury" under the policy definitions. *Id.* Distinguishing *Towne Realty,* the court explained how the plaintiffs in that case came within the "personal injury" section of the policy based on allegations involving damage to their personal and business reputations whereas the *Nichols* plaintiff failed to come within that same policy language based on the fact that " 'the complaints [in *Nichols* ] are devoid of any statements that could be considered an allegation of defamation.' " *Id.* (quoting *Nichols,* 412 N.W.2d at 549).

More recently, in *Bradley Corp. v. Zurich Insurance Co.,* 984 F.Supp. 1193 (E.D.Wis. 1997), a Wisconsin federal district court examined a sex discrimination complaint to see if a slander claim could be found within the "four corners of the ... complaint" that would trigger the insurer's duty to defend. *Id.* at 1199. Considering that the falsity of certain statements regarding the plaintiff was implied based on the discriminatory nature of the claim as well as the plaintiff's allegation that she had suffered an injury to her reputation, the court concluded that the complaint "sufficiently (or at least fairly debatably) alleged a slander or disparagement claim" which obligated the insurer to provide a defense.[10] *Id.* at 1200. Of more importance than the ruling in that case, however, is the court's outright rejection of the reasoning employed in *Nichols:*

> The Nichols court's gratuitous comments about needing a specific claim for defamation to trigger the duty to defend based on a policy's coverage for slander are contrary to the rule of Strid [*Strid v. Converse,* 111 Wis.2d 418, 331 N.W.2d 350 (1983) ] that the labels used are immaterial. Moreover, those comments were impliedly disregarded by the Town Realty court. As the more recent pronouncement of the Court of Appeals, Towne Realty has greater weight than Nichols for current purposes.

*Bradley Corp.,* 984 F.Supp. at 1201; *see also Bankwest v. Fidelity & Deposit Co.,* 63 F.3d

---

10. This obligation to defend would continue, as the court observed in *Bradley,* until such time as the insurer could file a successful motion to dismiss. 984 F.Supp. at 1201 (discussing fact that "pleading requirements for a slander claim may involve more specificity on the defamatory statements in order to survive a motion to dismiss").

974 (10th Cir.1995) (finding that allegations involving bank's interferences with customers' contractual and business relations by mailing letters that contained allegedly false information regarding loaning funds to customers invoked coverage for offense of "publication or utterance of a libel or slander or of other defamatory or disparaging material"); *United Wats, Inc. v. Cincinnati Ins. Co.*, 971 F.Supp. 1375 (D.Kan.1997) (holding that long-distance telephone provider's tortious interference claim alleging false statements invoked coverage under commercial general liability policy provision for "personal injury" arising out of publishing defamatory or disparaging material); *Home Insurance Co. v. Waycrosse, Inc.*, 990 F.Supp. 720 (D.Minn. 1996), *aff'd*, 131 F.3d 143 (8th Cir.1997) (finding duty to defend under policy provision covering "publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" where insured was sued for making defamatory statements and fraudulent misrepresentations in connection with its advertising activities); *City of Cape May v. St. Paul Fire & Marine Ins. Co.*, 216 N.J.Super. 697, 524 A.2d 882 (Ct. App.1987) (holding that policy coverage for "the publication or utterance of a libel or slander or other defamatory or disparaging material" required insurer to defend claim for malicious interference with business interests where plaintiff alleged that insured's false statements damaged his reputation).

■ Under longstanding principles of insurance law, an insurer's obligation to defend is "broader than the obligation to provide coverage" and this obligation is not dependent on the precise use of terms within the complaint that would "unequivocally delineate a claim which, if proved, would be within the insurance coverage." *Horace Mann*, 180 W.Va. at 378, 376 S.E.2d at 584. As we explained in syllabus point three of *Bruceton Bank v. U.S. Fidelity Guar. Ins. Co.*, 199 W.Va. 548, 486 S.E.2d 19 (1997), "included in the consideration of whether the insurer has a duty to defend is whether the allegations in the complaint . . . are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policies." When there is any question about an insurer's duty to defend under an insurance policy, such question "must be construed liberally in favor of an insured." *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W.Va. 190, 194, 342 S.E.2d 156, 160 (1986).

■ An examination of the allegations of the complaint filed in the instant case reveals an express averment of a false statement. Under West Virginia law, slander, which is simply defamation through oral means, or libel, which is the written form of defamation, *Greenfield v. Schmidt Baking Co., Inc.*, 199 W.Va. 447, 455, 485 S.E.2d 391, 399 (1997), requires proof of the elements of defamation, as previously set forth by this Court in syllabus point one of *Crump v. Beckley Newspapers, Inc.*, 173 W.Va. 699, 320 S.E.2d 70 (1983): "The essential elements for a successful defamation action by a private individual are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." Since the critical elements of a false defamatory statement that was published to another which resulted in injury are clearly stated on the face of the complaint, the averments of Mr. Butts' complaint are sufficient to invoke Aetna's obligation to defend under subsection (d) of the Personal and Advertising Injury section. Accordingly, we find the lower court to have erred in finding that Aetna had no obligation to defend under this provision of the policy.

■ We next consider whether Aetna's duty to defend was similarly triggered under subsection (e) of the Personal and Advertising Injury section of the policy. That specific provision extends coverage for personal injuries defined as arising from an "[o]ral or written publication of material that violates a person's right of privacy." Royal Vendors argues that coverage is clearly warranted based on this Court's holding in syllabus point five of *Morris v. Consolidation Coal Co.*, 446 S.E.2d 648, 191 W.Va. 426 (1994), wherein we provided a cause of action for inducing a physician to breach his fiduciary relationship with a patient:

A patient does have a cause of action against a third party who induces a physician to breach his fiduciary relationship if

the following elements are met: (1) the third party knew or reasonably should have known of the existence of the physician-patient relationship; (2) the third party intended to induce the physician to wrongfully disclose information about the patient or the third party should have reasonably anticipated that his actions would induce the physician to wrongfully disclose such information; (3) the third party did not reasonably believe that the physician could disclose that information to the third party without violating the duty of confidentiality that the physician owed the patient; and (4) the physician wrongfully divulges confidential information to the third party.

■ Aetna argues that while privacy was clearly considered in *Morris* as a possible underpinning for establishing a cause of action against a third-party who induces a breach of the physician/patient relationship, this Court actually decided that breach of the duty of confidentiality was the preferred foundation for such a claim. 191 W.Va. at 434, 446 S.E.2d at 656. We need not further address this contention, however, as the policy provision at issue here involves the "oral or written publication of material that violates a person's right of privacy." Accordingly, to invoke coverage under this policy section Mr. Butts would need to set forth an allegation that Royal Vendors published material that invaded his privacy. A fair reading of the complaint suggests, however, that what Mr. Butts is alleging is that Royal Vendors induced a third-party—Dr. Ingersoll—to publish material that violates his right to privacy. Since the policy was not written to cover publication by a third-party, we find no coverage under this section of the policy. Thus, we find no error in the lower court's ruling that Aetna had no duty to defend under subsection (e) of the Personal and Advertising Injury section of the policy.

Based on the foregoing, we affirm in part, reverse in part, and remand the decision of the Circuit Court of Jefferson County for further proceedings consistent with this opinion.

Affirmed, in part, reversed, in part, and remanded.