VALLEY BANCORPORATION and John Vucurevich, Plaintiffs-Respondents,

v.

AUTO OWNERS INSURANCE COMPANY, Defendant-Appellant.†

UNITED FIRE AND CASUALTY COMPANY, Plaintiff-Respondent,

v.

AUTO OWNERS INSURANCE COMPANY, Defendant-Appellant.

Court of Appeals

*No. 97–0365. Oral argument July 28, 1997.—Decided July 31, 1997.*

(Also reported in 569 N.W.2d 345.)

---

†Petition to review denied.

---

610

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ward I. Richter* and *David J. Pliner* of *Bell, Metzner, Gierhart & Moore, S.C.*, of Madison. There was oral argument by *David J. Pliner.*

On behalf of the plaintiff-respondent, United Fire & Casualty Company, the cause was submitted on the brief and oral argument by *Arnold P. Anderson* of *Mohr & Anderson, S.C.*, of Madison.

On behalf of the plaintiffs-respondents, Valley Bancorporation and John Vucurevich, the cause was submitted on the brief and oral argument by *Matthew A. Biegert* of *Doar, Drill & Skow, S.C.*, of New Richmond.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Auto Owners Insurance Company appeals a judgment finding it liable under its umbrella policy to indemnify its insured, Valley Bancorporation,

for a judgment obtained by Agri-Supply Cooperative, subsequently settled for $2.2 million. Auto Owners contends that the trial court erred by concluding that the evidence of covered risks of libel and slander was sufficiently intertwined with the uncovered claim of bad faith against the First National Bank to provide coverage for the resulting damages. Auto Owners contends that there was no coverage under its policy because the theory litigated and the special verdict answered by the jury only addressed an uncovered claim of bad faith and not libel and slander which are covered under the policy. Auto Owners further contends that the court erred by finding it liable to United Fire and Casualty on a theory of equitable subrogation for amounts paid by United over and above their policy limits. Because Auto Owners failed to demonstrate that the jury's findings of bad faith and the award of punitive damages were made without regard to the alleged acts of libel and slander alleged against the First National Bank, we conclude that there is coverage under Auto Owners' policy. We further conclude that United is entitled to equitable subrogation for amounts paid beyond the requirements of its policy toward the settlement of judgment obtained by Agri-Supply. Accordingly, the judgments are affirmed.

The factual background is long and complex but establishes the essential factual predicates upon which this case rests. Accordingly, these facts will be set forth in some detail. Agri-Supply Cooperative made a claim against the First National Bank (the Bank), the predecessor to Valley Bancorporation. The Bank was insured by United Fire and Casualty Company with a general liability policy containing a $500,000 limit. Auto Owners provided an umbrella policy with a $2,000,000 limit. Auto Owners' umbrella policy provided coverage

for claims of libel and slander. Auto Owners also provided coverage for punitive damages if the underlying policy provided such coverage, but would not cover punitive damages if such damages were excluded by United's underlying policy. United's policy in force at the time of the relevant events in 1987 provided coverage for punitive damages. Accordingly, Auto Owners also provided indemnification against punitive damages.

Agri-Supply's complaint against the Bank alleged a series of acts, including the mismanagement of its farm plan credit program and breach of the duty of good faith and fair dealing (bad faith) involving the erroneous calling of a promissory note prior to its due date and arguably tortious interference with its present and future business and contractual relationships. The Bank communicated to other lending institutions the fact that it had called the note and the expression of the Bank's employee's opinion that Agri-Supply was not a good credit risk. The Bank also sent a letter to Agri-Supply's customers demanding payment of accounts receivable be made directly to the Bank under the claim that said payments were authorized by the Uniform Commercial Code.

The Bank tendered the defense to its primary policy insurer, United, who accepted the defense subject to a reservation of rights. Neither the Bank nor United immediately notified Auto Owners of the pending lawsuit. On September 8, 1989, Auto Owners was advised of the lawsuit and was asked for its position regarding coverage. The trial was scheduled for January 1990, five months away. Under the terms of its policy, Auto Owners is required to cover punitive damages only in the event the underlying policy provided such coverage. Auto Owners responded to the Bank's inquiry with

a letter that noted paragraph 3 of the complaint could be construed to allege a claim of libel and slander. The thrust of the letter, however, was Auto Owners' position that there was no coverage for the losses claimed with the possible noted exception. The letter stated:

> Please be advised that our Legal Department has reviewed this and to follow the Reservation of Rights letter, we feel that the complaint does not state a claim for damages because of personal injury, property damage, or advertising liability as they are defined under the policy.
>
> . . . .
>
> We do wish to advise you that if the court would award damages for libel and slander as contained in Count #3, we would have coverage. The allegations, however, are unclear. It is our understanding that the complaint isn't requesting damages for the libel and slander, but rather for the resulting interference.

The trial was scheduled to commence on January 22, 1990. In early January, a strategy meeting was held between a claims supervisor of United Fire, counsel retained by United Fire and a private attorney hired by the Bank to address issues of insurance coverage. Auto Owners was not advised of the meeting and did not participate. During this meeting, there was a discussion as to liability and some concerns that the result of the case depended in large part upon the testimony of John Van Tassel, a loan officer with the bank. The parties were concerned that Van Tassel would not make a good impression and that his credibility was subject to serious attack.

At the trial's conclusion, the jury found that the Bank was negligent in its handling of the farm plan

credit program and assessed damages at $500,000. The jury also found that the Bank had acted in bad faith and assessed damages at $278,000. The jury awarded $4,000,000 punitive damages as a result of the Bank's conduct. The trial court reduced the punitive damage award to $2,500,000 and a total judgment, including disbursements and interest, was entered in the amount of $3,178,000 plus costs and disbursements of $387,865.62. The parties ultimately settled this judgment for a total of $2,200,000 with United Fire paying $500,000 plus $300,000 toward interest on the judgment with the other defendants paying the balance.

Valley Bancorporation and United then brought a claim against Auto Owners for indemnification under its policy. United was granted summary judgment based upon the then presiding trial judge's determination that Auto Owners had breached its duty to defend, that it was estopped from asserting defenses against United Fire and that Auto Owners must pay equitable subrogation to United Fire in the amount of $225,000. In a previous appeal, this court reversed the trial court's findings that Auto Owners had breached its duty to defend because at the time Auto Owners was notified of the claim the Bank had already obtained a defense from the primary carrier and had not requested Auto Owners to either undertake the defense or participate in the defense of this matter. This court remanded the matter to the trial court for a determination of the claims of coverage under Auto Owners' policy. The matter was then assigned to Judge Thomas Barland who determined that a claim of libel and slander was made in the complaint. Judge Barland also found that the evidence of libel and slander was so intertwined with the claim of bad faith so as to provide coverage under Auto Owners' policy. Judge Barland

further determined that United was entitled to equitable subrogation for its proportionate share of interest paid from United's policy on Auto Owners' behalf.

The parties agree that the issues raised involve questions of law that are determined without deference to the trial court. These claims either rely on motions of summary judgment that are reviewed de novo, *Home Ins. Co. v. Phillips*, 175 Wis. 2d 104, 110, 499 N.W.2d 193, 196 (Ct. App. 1993), or apply undisputed facts to propositions of law which also involve a de novo standard of review. *Delta Group, Inc. v. DBI, Inc.*, 204 Wis. 2d 515, 521, 555 N.W.2d 162, 165 (Ct. App. 1996).

We must first determine whether there is coverage for the claims Agri-Supply asserted against the Bank under the umbrella policy issued by Auto Owners. Auto Owners contends that this question is determined solely by the label placed upon the Bank's conduct (bad faith) in the special verdict form. We do not agree. It is the underlying conduct and not the label that is attached that determines insurance coverage. *See Jensen v. Christiansen & Lee Ins., Inc.*, 157 Wis. 2d 758, 763, 460 N.W.2d 441, 443 (Ct. App. 1990). If, for example, a covered tort such as libel and slander is charged as the tort of outrage, the insurance policy would provide coverage if the only acts consisting of the outrageous conduct by the defendant were the acts of libel and slander.

In this case, however, there are additional complexities. The plaintiff, Agri-Supply, was unconcerned with issues involving the Bank's insurance coverage for the liability claimed. Agri-Supply had a wholly solvent defendant from whom any judgment was collectible. Agri-Supply, therefore, proceeded to frame its claim in a fashion unrelated to the inquiry now before us. It is possible that acts of libel or slander could comprise

either all or a portion of the conduct found to be bad faith or giving rise to punitive damages. It is also possible that the conduct giving rise to liability found by the jury related only to acts involving the premature and improper calling of the promissory note held by the Bank.

Where a claim consists of a variety of acts some of which are covered under the insurance policy and others that are not, it is well settled that resulting liability falls within the terms of the insurance policy unless the uncovered risk is the sole cause of damages. *Kraemer Bros. Inc. v. U.S. Fire Ins. Co.*, 89 Wis. 2d 555, 570, 278 N.W.2d 857, 863–64 (1979); *Benke v. Mukwonago-Vernon Mut. Ins. Co.*, 110 Wis. 2d 356, 361, 329 N.W.2d 243, 246 (Ct. App. 1982). "[I]f there is *any* evidence that *any* included peril is a cause of damage, then, it is assumed that the insured paid to be protected from that loss, and it would be unfair to the insured to deny the benefits as paid for." *Benke*, 110 Wis. 2d at 360–61, 329 N.W.2d at 246.

This well-settled proposition of law results in liability under Auto Owners' policy if the libel and slander were among the acts the jury considered in its determination that the Bank acted in bad faith or engaged in sufficiently outrageous conduct as to warrant the imposition of punitive damages or both. It is only if the determinations for bad faith and punitive damages were totally unrelated to the conduct within the coverage of the insurance policy that Auto Owners would not be liable. *See Kraemer*, 89 Wis. 2d at 570, 278 N.W.2d at 863–64.

In this case, evidence was presented regarding letters and phone calls from the Bank's employee, Van Tassel, to third parties which formed the basis of the

libel and slander counts. Van Tassel told other banks that the management at Agri-Supply was difficult to work with and that the business was not creditworthy. It is possible that the jury took this evidence into account in its verdicts of bad faith and punitive damages; however, it is also possible the jury relied solely on the improper calling of the promissory note in its determination for its findings. Because the special verdict was not framed in a way to determine which conduct was relied upon by the jury in assessing punitive damages, we are unable to determine whether the damages awarded were caused in whole or in part by the conduct covered under the insurance policy.

Because we cannot determine with certainty what facts were relied upon by the jury in making its determinations, we must determine who bears the responsibility for proving whether the conduct covered by the insurance policy gave rise to the damages determined by the jury. We believe that this burden lies upon the insurer. *See Duke v. Hoch*, 468 F.2d 973, 978 (5th Cir. 1973); *see also Magnum Foods, Inc. v. Continental Cas. Co.*, 36 F.3d 1491, 1499 (10th Cir. 1994).

■ Auto Owners was aware that the complaint could be asserting covered claims for libel and slander, but discounted the importance of these claims. At trial, evidence was admitted relating to the libel and slander of the bank and its employee. Under these facts, whether coverage existed was uncertain. When there are uncertainties over coverage, the insurer bears the burden of resolving coverage issues. *Towne Realty, Inc. v. Zurich Ins. Co.*, 201 Wis. 2d 260, 548 N.W.2d 64 (1996). Further, Auto Owners had the burden to allocate damages between the uncovered bad faith claim and covered libel and slander claims. *Duke*, 468 F.2d at

978. Auto Owners' failure to meet the above burdens places this case under *Benke*, and because there is evidence that coverage claim led to damages, coverage is afforded.

■

Auto Owners asserts that the evidence at trial must prove libel or slander by the great weight or clear preponderance of the evidence for there to be coverage. Although the great weight or clear preponderance standard is the burden a plaintiff must satisfy to establish libel or slander, *Calero v. Del Chem. Corp.*, 68 Wis. 2d 487, 500, 228 N.W.2d 737, 745 (1975), that is not the standard to determine whether there is coverage in a case where both covered and uncovered claims are demonstrated. *Benke*, 110 Wis. 2d at 360, 329 N.W.2d at 246. On review, the standard is whether "there is *any* evidence that *any* included peril is a cause of damage" in the record. *Id.* The "any evidence" standard is applied in determining coverage because we cannot determine the weight the jury assigned to the libel and slander evidence in reaching the jury verdict. *See id.* at 360–62, 329 N.W.2d at 246–47.

The record shows that Van Tassel admits making phone calls which termed Agri-Supply as hard to work with and uncreditworthy. In addition, customers were sent a letter stating that they were to pay their Agri-Supply bills to the Bank when there was no basis to direct such funds. We conclude that this evidence is sufficient, under *Benke*, to demonstrate that libel and slander was before the jury for consideration in determining the bad faith claim and the conduct justifying the punitive damages.

■

Auto Owners argues that these statements did not cause damage to Agri-Supply because the banks did

not rely upon Van Tassel's representations and the other banks would have inevitably discovered the called note in their normal course of loan application investigations. Nominal and punitive damages are available for libel or slander per se without proof of special damages. *Bauer v. Murphy*, 191 Wis. 2d 517, 524–25, 530 N.W.2d 1, 3–4 (Ct. App. 1995). In this case, Agri-Supply did not need to prove special damages from libel and slander for there to be coverage for the punitive damages. All that was necessary was the allegation of libel and slander and the production of evidence supporting that allegation.

Auto Owners argues that it was precluded from participation in this trial by virtue of the untimely notice of the claim and the Bank's refusal to cooperate with Auto Owners. Auto Owners correctly notes that the failure to give timely notice can result in the loss of insurance coverage by an insured. *See Fehring v. Republic Ins. Co.*, 118 Wis. 2d 299, 304, 347 N.W.2d 595, 598 (1984) *overruled on other grounds, DeChant v. Monarch*, 200 Wis. 2d 559, 547 N.W.2d 592 (1996). Failure to give notice, however, does not mean that any delay in giving such notice will automatically result in the loss of coverage. *Id.* The insurer must be prejudiced in some fashion by the delayed notice. *Id.* In this case, the trial court properly concluded that Auto Owners was not prejudiced by the tardy notification of claim.

Auto Owners points to no evidence that it was prejudiced from the late notice. Auto Owners asserts that it should have been invited to certain pre-trial meetings, but it admits that nothing would have changed had it been invited. Auto Owners was aware of the claim five months before trial, but chose not to

clarify the coverage issues in this case. Further, Auto Owners refused to take part in post-trial settlement negotiations. Based upon these facts, Auto Owners cannot claim it was prejudiced by the late notice.

An alternate theory that imposes coverage on Auto Owners concerns the provision of the Auto Owners' policy which covers the award of punitive damages. At oral argument, Auto Owners explained that under the policy it is only required to cover punitive damages if United's underlying policy provided coverage for punitive damages. On appeal, Auto Owners contends that United's policy does not provide coverage for punitive damages despite the fact that United never denied such coverage. Auto Owners argues that United's policy provides for punitive damages resulting from "personal injury" and that the bad faith claim is not a personal injury. We disagree. The jury heard evidence of libel and slander. United's policy defines personal injury to include libel and slander. This policy covers punitive damages arising from personal injury. Therefore, punitive damages arising from libel and slander are covered under United's policy and subsequently under Auto Owners' policy.

Because evidence of libel and slander was demonstrated, the jury could have considered such evidence in awarding at least some of the punitive damages. The burden is on the insurer to demonstrate that the libel and slander evidence played no part in the jury's determination of punitive damages. *Duke*, 468 F.2d at 978. Because Auto Owners has failed to demonstrate that this conduct played no role in the punitive damages awarded by the jury, those damages are covered by Auto Owners' policy.

Moreover, Auto Owners had the opportunity to contest its coverage for punitive damages arising from

the claim of bad faith when first advised of Agri Supply's demand. It did nothing to determine coverage nor to address its now asserted claim that the punitive damage provision of its policy does not apply to the claims asserted by the plaintiffs. Because Auto Owners did not seek a declaratory judgment in regard to coverage or otherwise reserve the issue of coverage, it cannot now claim limitations on its punitive damage coverage. *Newhouse v. Citizens Sec. Mut. Ins. Co.*, 176 Wis. 2d 824, 837, 501 N.W.2d 1, 6 (1993). Auto Owners had a duty to resolve ambiguities regarding coverage, *Towne*, 201 Wis. 2d at 260, 548 N.W.2d at 64, but Auto Owners simply denied coverage and took no further steps to clarify coverage for a complaint that in the insurer's own words was "unclear" whether a covered claim was asserted.

We therefore conclude that Auto Owners' coverage for punitive damages is sufficient to provide coverage for the damages awarded in this case. Auto Owners' failure to demonstrate any apportionment between the punitive damages and the compensatory damages awarded for bad faith requires it provide coverage for the entire amount of the settlement in excess of United's limits. *See Duke*, 468 F.2d at 978; *see also Kraemer*, 89 Wis. 2d at 570, 278 N.W.2d at 863–64.

Finally, Auto Owners argues that the trial court erred in awarding United equitable subrogation for the amount United paid over its policy limits in interest. We conclude subrogation was appropriate.

*D'Angelo v. Cornell Paperboard Prods. Co.*, 19 Wis. 2d 390, 399–400, 120 N.W.2d 70, 75 (1963), sets forth the doctrine of subrogation. "Subrogation may properly be applied when a person other than a mere volunteer pays a debt or demand which in equity and good con-

623

science should be satisfied by another. The doctrine rests upon the theory of unjust enrichment." United contracted with Auto Owners to provide coverage in excess of United's policy limits of $500,000 and did not exclude interest for damages it was required to pay. United paid its policy limits but also paid approximately $300,000 in interest as well. United was not a volunteer because it faced a requirement to pay interest which was accumulating at a substantial daily rate if Auto Owners coverage did not apply. The only way United could protect itself from these dramatically increasing costs, which would be covered by Auto Owners if Auto Owners provided coverage, was to pay the interest amount and seek recovery from Auto Owners. We, therefore, conclude that United was required by financial necessity to make the interest payments pending a determination of Auto Owners' coverage.

■ Subrogation is an equitable remedy. "Subrogation is based on equity and is permitted only when the rights of those seeking subrogation have greater equity than . . . those who oppose it." *First Nat'l Bank v. Hansen*, 84 Wis. 2d 422, 429, 267 N.W.2d 367, 370 (1978). United made its interest payment to avoid having to pay more if Auto Owners did not afford coverage. Having established that Auto Owners provides coverage, equity favors United recovering the money it paid to lower its risk if Auto Owners did not afford coverage. We conclude that subrogation for United's payment of interest was appropriate.

Because Auto Owners failed to satisfy its burden that the jury's finding was made without regard to the covered acts of libel and slander, we conclude that coverage existed under Auto Owners' policy. We further conclude United was entitled to subrogation against

Auto Owners for the amounts paid in excess of its policy limits.

*By the Court.*—Judgments affirmed.