**U.S. FIRE INSURANCE COMPANY,**
Plaintiff,

v.

**GREEN BAY PACKAGING,**
**INC., Defendant.**

No. 97–C–791.

United States District Court,
E.D. Wisconsin.

Oct. 5, 1999.

Wm. J. Katt, Milwaukee, WI, for Plaintiff.

Gregory B. Conway, Green Bay, WI, for Defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff United States Fire Insurance Company ("U.S.Fire") seeks a declaration that it need not indemnify defendant Green Bay Packaging, Inc. ("Green Bay") under an excess liability insurance policy for a payment Green Bay was required to make to satisfy a judgment. Green Bay counterclaims, also seeking a declaration as to U.S. Fire's obligations under the policy and alleging that U.S. Fire breached its duty to defend Green Bay. Jurisdiction is based on diversity of citizenship. U.S. Fire now moves for summary judgment.

## I. FACTUAL BACKGROUND

### A. The Insurance Policy

Green Bay carried its primary liability insurance through Wausau Insurance Company. The Wausau policy provided liability coverage up to a limit of $1,000,000 per occurrence and $2,000,000 in the aggregate, with a $250,000 deductible. Green Bay also held an umbrella policy from Viking Insurance Company, which was transferred to U.S. Fire. The umbrella policy obligated U.S. Fire to indemnify Green Bay for covered damages in excess of primary coverage.

The excess policy provided coverage for "damages arising out of an 'occurrence' which are in excess of the underlying insurance . . . ." An "occurrence" includes "[a]n offense that results in 'Personal Injury.'" "Personal injury" includes "oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." (Conway Aff., Ex. 9.)

The policy obligates the insured to provide notice to U.S. Fire as follows:

E. Duties in the Event of Occurrence, Claim or Suit.

(1) "You" must notify "us" as soon as practicable of an "occurrence" which may result in a claim under this policy.

. . . .

(2) If a claim is made or "suit" is brought against any "insured" that is reasonably likely to involve this policy, you must notify "us" in writing of the claim or "suit" as soon as practicable. (3) You and any other involved "insureds" must:

  (a) immediately send us copies of any demands, notices, summons or legal papers received in connection with the claim or a "suit."

*(Id.)*

The above language was modified by the following endorsement to the policy:

## NOTICE OF OCCURRENCE

It is hereby understood and agreed that knowledge of an occurrence is not deemed to have taken place until the insured's insurance manager or person designated for insurance functions is advised of such an occurrence.

Mr. Robert A. VanderHeyden, 1700 N. Webster Ave., Green Bay, WI 54307–9017.

*(Id.)*

The policy also includes the following "Defense Settlement" provision:

For damages covered by this policy, but not covered by any other insurance or underlying insurance, we have these obligations:

A. We will defend any "suit" seeking damages covered by this policy.

*(Id.)*

## B.  The Underlying Lawsuit

In 1989 Green Bay sued in Oklahoma state court two former employees, Terry Jenkins and Mark Wojciehowski, and a company Jenkins had formed. The defendants counterclaimed, alleging various causes of action including the following:

6. That ... plaintiff has engaged in various acts designed to drive the defendant, JENKINS, out of business ....

. . . .

11. That the acts of the plaintiff ... against the defendant, JENKINS, have been libelous and slanderous, to both the personal reputation of the defendant, JENKINS, and to his reputation in his trade and profession.

WHEREFORE premises considered, the defendant, JENKINS, prays that he have and recover judgment as and against the plaintiff, GREEN BAY PACKAGING, INC., for actual damages in excess of Ten Thousand ($10,000) dollars for their economic damage to him, and for punitive damages in excess of Ten Thousand ($10,000) dollars, for their oppressive actions, constituting unfair trade, restraint of trade, predatory trade practices, and libel and slander.

(Conway Aff., Ex. 7.)

The case was tried to a jury in January 1994. The jury found against Green Bay on all of its claims, and, on Terry Jenkins's counterclaim, found in pertinent as follows:

3. To Terry Jenkins for interference with a business relationship:

  a.  actual damages—$1,500,000

  b.  punitive damages—$1,500,000

4. To Terry Jenkins for defamation:

  a.  actual damages—$1,500,000

  b.  punitive damages—$1,500,000

(Christensen Aff., Ex. 4.)

Green Bay appealed and the Oklahoma Court of Appeals reversed and set aside Jenkins's entire award. Jenkins then appealed to the Oklahoma Supreme Court, which on October 29, 1996, ruled in part as follows:

## II.   Defamation Theory of Liability

Testimony was presented at trial concerning statements of Green Bay management and employees. The testimony related statements that Jenkins and his company were on the edge of business ruin and statements which implied that Jenkins could not be trusted to deliver on orders.

Green Bay asserts that the statements merely expressed opinion and were not defamatory. That issue, however, need not be addressed because the statements were also the basis of Jenkins's interference claim against Green Bay. In addition, the same evidence was presented to establish damages without regard to whether the damages were caused by interference or by defamation.

Only a single cause of action can be predicated on the same set of facts, but different remedies and theories of liability may be presented in support of each claim alleged. Jenkins asserted only one cause of action made by Green Bay management and employees. He pressed that cause of action under alternative theories of intentional infliction of emotional distress, interference with business relations, and defamation.

Jenkins['s] defamation claim was an alternative theory of relief, not a separate cause of action. Thus, he was entitled to a damage award for one cause of action not two. Jenkins['s] award of damages on his defamation claim is reversed. On remand, the trial court is directed to enter judgment for Jenkins only on his interference claim in the amount of $1.5 million actual damages, and $1.5 million punitive damages.

(Conway Aff., Ex. 13 (citation omitted).)

The Supreme Court also held that Green Bay had to pay Jenkins's attorneys fees and remanded the case to the trial court for determination of the amount. On May 18, 1998, the trial court approved an award of $2,300,000. Green Bay appealed and the matter is presently pending in the Oklahoma Court of Appeals.

On December 3, 1996, Green Bay paid Jenkins just over $4,759,245, representing a combination of compensatory and punitive damages, costs and interest.

## C. Duty to Defend

On January 27, 1997, Wausau paid approximately $2,000,000—its policy limits—to Green Bay as indemnification for Jenkins's judgment. This payment relieved Wausau of any further obligation to Green Bay. On February 26, 1997, Green Bay tendered a defense to U.S. Fire of the remainder of the Jenkins lawsuit. At this point the only remaining issue in the suit was attorneys fees. U.S. Fire refused to defend Green Bay and brought the present declaratory action.

## D. Notice

Green Bay was served with Jenkins's counterclaim in 1990, but did not notify Wausau or U.S. Fire of it until 1994, shortly after the adverse verdict. Green Bay states that the reason it did not notify its insurers of the counterclaim was because its attorneys considered it to be largely meritless, having a potential value of less than the $250,000 deductible on the Wausau policy. Green Bay was aware, however, that Jenkins was seeking damages in excess of $4,000,000.

Green Bay's insurance managers did not know about Jenkins's counterclaim until after the verdict although other Green Bay executives were aware of the counterclaim soon after it was filed.

Ellen Marion, a claims specialist for U.S. Fire, testified in a deposition in the present case that she had no reason to believe Green Bay's counsel in the Oklahoma case was not competent; that U.S. Fire did not generally defend cases where it provided excess coverage but relied on the primary carrier to do so; that as an excess carrier U.S. Fire retained counsel to monitor pending actions against insureds about ten percent of the time and that monitoring counsel usually reviewed documents but was not directly involved in the case. Marion also testified that, had U.S. Fire received advance notice of the counterclaim, it would have made an independent decision as to the merits of the claim rather than relying on Green Bay's assessment.

## II. APPLICABLE LAW

### A. Summary Judgment Standard

■ Summary judgment is appropriate where the "pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[M]aterial facts are those facts which, under the relevant substantive law, 'might affect the outcome of the suit.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute over such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the non-moving party. *Id.* Thus, a genuine issue of material fact does not exist unless "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505.

The moving party has the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. If this burden is met, the non-moving party must then present specific evidence showing that a material factual dispute exists, precluding summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In weighing the motion, I construe evidence in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

**B. Choice of Law**

When, as here, a federal court sits in diversity jurisdiction pursuant to 28 U.S.C. § 1332 it applies state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Therefore, to decide which state's substantive law to apply I look to Wisconsin choice of law rules. However, I need not apply choice of law rules at all unless the parties point to an outcome-determinative differ-

ence among potentially applicable state laws. *Ziolkowski v. Caterpillar, Inc.*, 800 F.Supp. 767, 778 (E.D.Wis.1992). The present case involves an insurance policy issued to a Wisconsin company, and the parties agree that Wisconsin substantive law governs. Thus, I will apply Wisconsin substantive law.

**C. Wisconsin Law Relating to Construction of Insurance Policies and Duty to Defend**

As a general matter, interpretation of insurance policies is governed by the same rules of construction that apply to other contracts. *Sprangers v. Greatway Ins. Co.*, 182 Wis.2d 521, 536, 514 N.W.2d 1 (1994). In Wisconsin, insurance contracts should be interpreted in order to effect the true intent of the parties and the extent of policy coverage. *Limpert v. Smith*, 56 Wis.2d 632, 640, 203 N.W.2d 29 (1973). In construing a policy, the clear and unambiguous language of the policy is to be given the plain and ordinary meaning that would be understood by a reasonable person in the position of the insured. *General Cas. Co. v. Hills*, 209 Wis.2d, 167, 175, 561 N.W.2d 718 (1997). If a policy is clear and unambiguous on its face, the terms of that policy should not be rewritten by construction to bind an insurer to a risk it never contemplated and for which premiums were never paid. *City of Edgerton v. General Cas. Co.*, 184 Wis.2d 750, 780–81, 517 N.W.2d 463 (1994). But if the policy language is ambiguous, coverage should be resolved in favor of the insured. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis.2d 808, 811, 456 N.W.2d 597 (1990). Whether a contract is ambiguous is a question of law. *Golden Valley Supply Co. v. American Ins. Co.*, 195 Wis.2d 866, 878, 537 N.W.2d 58 (Ct.App.1995). Words or phrases in a contract are ambiguous only when they are "reasonably or fairly susceptible to more than one construction." *Stanhope v. Brown County*, 90 Wis.2d 823, 849, 280 N.W.2d 711 (1979).

■ Finally, in a Wisconsin coverage dispute, the insured has the burden of proving that coverage applies. *Just v. Land Reclamation, Ltd.,* 151 Wis.2d 593, 605, 445 N.W.2d 683 (Ct.App.1989), *rev'd on other grounds,* 155 Wis.2d 737, 456 N.W.2d 570 (1990). Likewise, If the insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the exclusion is applicable. *Id.*

■ To determine whether an insurer has a duty to defend, the court must compare the allegations within the four corners of the complaint to the terms of the insurance policy. *Newhouse by Skow v. Citizens Sec. Mut. Ins. Co.,* 176 Wis.2d 824, 835, 501 N.W.2d 1 (1993). The existence of the duty depends solely on the nature of the claim asserted against the insured and has nothing to do with the merits of the claim. *Radke v. Fireman's Fund Ins. Co.,* 217 Wis.2d 39, 43, 577 N.W.2d 366 (Ct.App.), *review denied,* 219 Wis.2d 923, 584 N.W.2d 123 (1998). If the complaint contains allegations that, if proven, would be covered by the policy, the insurer has a duty to defend. *Grube v. Daun,* 173 Wis.2d 30, 72, 496 N.W.2d 106 (Ct.App.1992). Whether the insurer has a duty to defend is a question of law. *Newhouse,* 176 Wis.2d at 833, 501 N.W.2d 1.

■ Because it is triggered by arguable as opposed to actual coverage, the duty to defend is broader than the duty to indemnify. *Id.* at 834–35, 501 N.W.2d 1. "What is important is not the legal label that the plaintiff attaches to the defendant's (that is, the insured's) conduct, but whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers." *Curtis–Universal, Inc. v. Sheboygan Emergency Med. Servs., Inc.,* 43 F.3d 1119, 1122 (7th Cir.1994). If there is any doubt regarding the duty to defend, it must be resolved in favor of the insured. *General Cas.,* 209 Wis.2d at 176, 561 N.W.2d 718. When facts are alleged that are partially within and partially without the scope of coverage, the insurer is obligated to defend the entire suit. *See*

*Curtis–Universal,* 43 F.3d at 1122. Similarly, policy exclusions are narrowly construed against the insurer. *Smith,* 155 Wis.2d at 811, 456 N.W.2d 597.

■ Although an insurance company that "declines to defend does so at [its] peril," *Grieb v. Citizens Cas. Co.,* 33 Wis.2d 552, 558, 148 N.W.2d 103 (1967), it is not liable to its insured unless there is, in fact, coverage under the policy, *id.* at 558–59, 148 N.W.2d 103, or coverage is determined to be "fairly debatable," *United States Fire Ins. Co. v. Good Humor Corp.,* 173 Wis.2d 804, 830, 496 N.W.2d 730 (Ct.App.1993); *Production Stamping Corp. v. Maryland Cas. Co.,* 199 Wis.2d 322, 327, 544 N.W.2d 584 (Ct.App.1996).

■ When an insurance company is in doubt about whether it has a duty to defend a claim against an insured, the Wisconsin Supreme Court has made clear how the company should proceed. First, the company will not breach its duty to defend by denying coverage where the issue of coverage is fairly debatable as long as the insurer provides coverage and a defense once coverage is established. *Elliott v. Donahue,* 169 Wis.2d 310, 317, 485 N.W.2d 403 (1992). However, when coverage is not determined before a liability trial, the insurer must provide a defense for its insured with regard to liability and damages. *Id.* at 318, 485 N.W.2d 403.

■ The proper procedure for the insurance company to follow when coverage is disputed is (1) to intervene in the underlying lawsuit and request a bifurcated trial on coverage and liability issues, and request that determination of the liability issue be stayed until the coverage question is resolved, or (2) to defend the insured while reserving its rights to contest coverage. *Newhouse,* 176 Wis.2d at 836, 501 N.W.2d 1. When this procedure is followed the insurance company runs no risk of breaching its duty to defend. *Id.* In cases where a coverage decision is not final before the trial on liability and damages occurs, the insurance company must

provide a defense to its insured. *Elliott,* 169 Wis.2d at 318, 485 N.W.2d 403; *Mowry v. Badger State Mut. Cas. Co.,* 129 Wis.2d 496, 528–29, 385 N.W.2d 171 (1986). The best approach is for the insurance company to defend under a reservation of rights. *Newhouse,* 176 Wis.2d at 837, 501 N.W.2d 1.

An insurance company may not reject a tender of defense when coverage is fairly debatable without breaching its duty to the insured. *Elliott,* 169 Wis.2d at 317, 485 N.W.2d 403. Breach of a duty to defend may result in the insurer's waiver of its right to assert coverage defenses. *Professional Office Bldgs., Inc. v. Royal Indem. Co.,* 145 Wis.2d 573, 427 N.W.2d 427 (Ct.App.1988).

## III. DISCUSSION

U.S. Fire seeks a declaration that its policy of excess liability coverage does not require it to indemnify Green Bay for payments made to Jenkins. U.S. Fire makes a number of arguments, one of which is that Green Bay failed to provide proper notice to U.S. Fire of Jenkins's claim. Green Bay disagrees and also argues that U.S. Fire breached its duty to defend and thus waived any coverage defenses. The duty to indemnify and the duty to defend are interrelated but the duty to defend is broader and is triggered if coverage is fairly debatable. Therefore, it makes sense to begin the analysis by discussing the duty to defend. The question of whether Green Bay gave proper notice, however, affects both the duties to defend and indemnify and will be discussed separately in Part III.C. *infra.*

### A. Duty to Defend

U.S. Fire's policy required it to defend "any 'suit' seeking damages covered by the policy" and not covered by other insurance. (Conway Aff., Ex. 9.) Jenkins sued Green Bay for damages resulting in part from "libelous and slanderous" acts. (Counterclaim ¶ 11.) Such acts were covered by the policy. When Green Bay tendered a defense of Jenkins's suit to U.S. Fire, Wausau's policy had been exhausted.

Thus, it would appear that when Green Bay tendered a defense, U.S. Fire had a duty to defend. U.S. Fire, however, suggests that various developments in the course of the litigation had the effect of eliminating coverage and its duty to defend. The question of whether U.S. Fire was under a duty to defend is one of law for the court. *Newhouse,* 176 Wis.2d at 833, 501 N.W.2d 1.

### 1. Effect of Developments in Underlying Suit on Duty to Defend

First, U.S. Fire argues that it had no duty to defend because at the time of the tender of defense the only remaining issue in the suit was attorneys fees, which were not damages covered by the policy. Second, U.S. Fire suggests it no longer had a duty to defend because the decision of the Oklahoma Supreme Court imposed damages against Green Bay on the uncovered business interference claim, and thus when the defense of Jenkins's suit was tendered the policy was no longer in play. U.S. Fire's position is that even though the allegations in the complaint gave rise to a duty to defend, the posture of the case in its later phase did not.

There are two problems with U.S. Fire's argument. First, under Wisconsin law the duty to defend is determined by comparing the allegations within the four corners of the complaint to the language in the insurance policy. *Id.* at 835, 501 N.W.2d 1. If the complaint alleges acts for which coverage is fairly debatable the insurer has a duty to defend. *Elliott,* 169 Wis.2d at 317, 485 N.W.2d 403. The existence of the duty to defend therefore depends on the allegations in the lawsuit at the time the suit is filed. Thus, based on the complaint, there was a duty to defend notwithstanding the subsequent course of the litigation.

Second, the insurance policy required U.S. Fire to defend "any 'suit' seeking damages covered by this policy." (Conway Aff., Ex. 9.) The policy required U.S. Fire to defend *suits,* not claims or issues. And

there was only one suit in this case. Green Bay did not tender the defense of a separate action for attorneys fees. Rather, the claim for attorneys fees arose within a suit seeking damages covered by the policy. Under Wisconsin law when a suit involves some matters that are within the scope of coverage and some that are not, the insurer is obligated to defend the entire suit. *Curtis–Universal*, 43 F.3d at 1122. Moreover, if there is any doubt regarding the duty to defend it must be resolved in favor of the insured. *General Cas.*, 209 Wis.2d at 176, 561 N.W.2d 718. At a minimum, at the time of the tender of defense there was doubt about whether U.S. Fire had a duty to defend. For these reasons neither the fact that when the defense was tendered the only remaining issue in the suit was attorneys fees, nor the decision of the Oklahoma Supreme Court allocating damages to the business interference claim [1] eliminated U.S. Fire's duty to defend.[2]

### 2. Was Duty Breached?

■ When a defense is tendered in a case where an insurer believes there is no coverage the proper procedure is for the insurer to request a bifurcated trial on the issues of coverage and liability and move to stay any proceedings on liability until the coverage issue is resolved. *Newhouse*, 176 Wis.2d at 836, 501 N.W.2d 1. When an insurance company follows this procedure it runs no risk of breaching the duty

1. It should be noted that even though damages were allocated to the business interference claim it was fairly debatable that the damage award was based on acts covered by the policy. *See* discussion *infra* Part III.B.

2. Although I do not reach the issue of whether it was fairly debatable that attorneys fees could be considered damages, I note that in some circumstances attorneys fees have been treated as damages. In *School District v. Wausau Insurance Co.*, 170 Wis.2d 347, 488 N.W.2d 82 (1992), the court held that attorneys fees in a case under 42 U.S.C. § 1988 were not damages and did not give rise to a duty to defend. However, as the *School District* court itself recognized, in slightly different fact situations other courts have come out differently. In *School District*, 170 Wis.2d at

to defend. *Id.* However, if the insurer permits the case to proceed without a prior determination of coverage, the insurer who refuses to defend does so "at its peril." *Elliott*, 169 Wis.2d at 321, 485 N.W.2d 403. In *Newhouse*, the Wisconsin Supreme Court said that when a defense is tendered and an insurer does not obtain a stay pending a declaration of the insurer's obligations, "[t]he best approach is for the insurance company to defend under a reservation of rights" pending the coverage determination. *Newhouse*, 176 Wis.2d at 841, 501 N.W.2d 1. The court stated that while the insurer "had every right" to deny coverage "it adopted an extremely risky strategy" when it did so without providing a defense. *Id.*

■ In the present case, U.S. Fire did not seek to intervene in the Oklahoma litigation to determine whether it had a duty to defend the remainder of Jenkins's suit. Rather it declined to defend and brought a separate declaratory action to determine the rights of the parties. Relying on *Radke*, 217 Wis.2d 39, 577 N.W.2d 366, U.S. Fire contends that by bringing this declaratory action it complied with the requirements of Wisconsin law.

In discussing how insurers could raise coverage issues without breaching the duty to defend, the *Radke* court stated that, "the insurer can request a bifurcated trial or a declaratory judgment so that the cov-

377, 488 N.W.2d 82 (citations omitted), the court discussed one such case, *City of Ypsilanti v. Appalachian Insurance Co.*, 547 F.Supp. 823 (E.D.Mich.1982) *aff'd*, 725 F.2d 682 (6th Cir.1983), as follows:

> It held that in a civil rights suit, attorney fees are a form of damage which the insurer contracted to cover. The *Ypsilanti* court reasoned that attorney fees awarded in the underlying litigation do not constitute "costs" under the insurance policy because the definition of "costs" refers only to the expense of carrying on the defense of the lawsuit. It does not refer to sums for which the insured is found liable, such as an award of attorney fees. The *Ypsilanti* court, therefore, concluded that such attorney fees must be considered "damages."

erage issue may be resolved before the liability and damage issues." *Id.* at 45, 577 N.W.2d 366. U.S. Fire's reliance on *Radke* is misplaced. *Radke* is consistent with *Newhouse* because it emphasized that a declaratory action was not an end in itself but a means of attempting to resolve the coverage issue *before* the liability issue so that the insured does not go without a defense while coverage is being resolved. *See also Good Humor,* 173 Wis.2d 804, 496 N.W.2d 730 (insurer held to have breached duty to defend where it refused to provide a defense and then filed declaratory action to determine the rights of the parties).

▉▉▉ U.S. Fire argues that the procedure recommended in *Newhouse* was inapplicable in the present case because the insurer did not receive notice until after the verdict and thus had no opportunity to follow the recommended procedures. This assertion is unpersuasive. A tender of defense that comes at a later stage in a case does not relieve the insurer of the duty to use the proper procedure. in challenging coverage. *Bradley Corp. v. Zurich Ins. Co.,* 984 F.Supp. 1193, 1203–04 (E.D.Wis. 1997). While late notice by Green Bay may have relieved U.S. Fire of the duty to defend it did not relieve it of the obligation to use the prescribed procedure to determine whether it had such a duty. When the defense of Jenkins's suit was tendered, U.S. Fire had the same options as the insurer in *Newhouse.* It could have intervened or defended. U.S. Fire had been aware of the Oklahoma litigation for three years before a defense was tendered. It surely could have provided a defense. Moreover, it could have provided a defense without giving up its right to challenge coverage based on late notice or on any other ground. U.S. Fire was in a position comparable to that of any insurance company that disputes coverage but in the meantime has to deal with the question of the insured's defense. Thus, by not intervening and moving to bifurcate and stay, and not providing a defense, U.S. Fire proceeded at its peril. Thus, unless it prevails on its late notice argument, dis-

cussed below, U.S. Fire will be held to have breached the duty to defend.

### 3. Consequences of Breach of Duty to Defend

▉▉▉ What consequences flow from a breach of the duty to defend? This issue is one of law for the court. Generally, the insurer is liable to the insured for damages that naturally flow from the breach. *Newhouse,* 176 Wis.2d at 837, 501 N.W.2d 1. In *Newhouse,* a judgment against the insured rendered before coverage was determined was considered to be a natural consequence of the breach. *Id.* at 839, 501 N.W.2d 1. Under the logic of *Newhouse,* one of the natural consequences of U.S. Fire's breach is the award of attorneys fees against Green Bay, the matter that U.S. Fire failed to defend. Moreover, an insurer that breaches the duty to defend is generally held to have waived the right to raise coverage defenses. *See Professional Office Bldgs.,* 145 Wis.2d 573, 427 N.W.2d 427. It is surely reasonable to apply the waiver rule to the award of attorneys fees and to hold U.S. Fire responsible for this sum. Other damages that naturally flow from U.S. Fire's breach of the duty to defend are Green Bay's costs and attorneys fees in defending Jenkins's suit after the tender of defense was refused and Green Bay's costs and attorneys fees in defending the present action.

▉▉▉ With respect to the underlying damage award it would be unfair to hold that U.S. Fire waived its right to challenge coverage because the original award was rendered before U.S. Fire was even made aware of the claim. Thus, the damage award could not be said to have been a natural consequence of the breach.

### B. Duty to Indemnify

▉▉▉ The question of whether U.S. Fire owes a duty of indemnity with respect to Jenkins's damage award remains to be addressed. The parties disagree as to whether the judgment of the Oklahoma Supreme Court requiring Green Bay to

pay damages to Jenkins on his claim of business interference resulted in a damage award covered by the policy. This issue is one of law for the court. *Valley Bancorporation v. Auto Owners Ins. Co.,* 212 Wis.2d 609, 617, 569 N.W.2d 345 (Ct.App. 1997).

A duty to indemnify exists if acts occur that are insured against. Where a claim consists of a variety of acts, some of which are covered and others that are not, it is well settled that resulting liability falls within the terms of the insurance policy unless the uncovered risk is the sole cause of damages. *Kraemer Bros., Inc. v. U.S. Fire Ins. Co.,* 89 Wis.2d 555, 570, 278 N.W.2d 857 (1979); *see also Benke v. Mukwonago–Vernon Mut. Ins. Co.,* 110 Wis.2d 356, 361, 329 N.W.2d 243 (Ct.App. 1982) ("if there is *any* evidence that *any* included peril is a cause of damage, then, it is assumed that the insured paid to be protected from that loss, and it would be unfair to the insured to deny the benefits as paid for."). Only if the damage award was totally unrelated to the conduct within the coverage of the insurance policy will the insurer not be liable. *Kraemer,* 89 Wis.2d at 570, 278 N.W.2d 857.

U.S. Fire's policy covers certain damages arising out of an "occurrence." An occurrence includes an offense resulting in "personal injury." Personal injury includes "oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." Thus, in order for there to be coverage there must be personal injury caused by an act of slander, libel or disparagement.

In the present case the Oklahoma Supreme Court reinstated the jury verdict of $3,000,000 in compensatory and punitive damages on Jenkins's business interference claim and set aside the jury verdict of the same amount on his defamation claim. The court took this action because it concluded that "the same evidence was presented to establish damages" on both claims and that "only a single cause of action can be predicated on the same set of facts." (Conway Aff., Ex. 13 at 9–10.) The evidence to which the court referred consisted of statements by Green Bay employees that "Jenkins and his company were on the edge of business ruin" and statements that implied Jenkins could not be trusted to deliver on orders. (*Id.* at 9.) The court expressly refrained from determining whether these statements were libelous or slanderous. I reach no conclusion on this question either.

The U.S. Fire policy, however, covers damages resulting from publication of material that "disparages a person's or organization's goods, products or services." "Disparage" means to degrade or "lower in esteem or reputation." Webster's Third New International Dictionary Unabridged 653 (1976); *Bradley,* 984 F.Supp. at 1200. Green Bay's statements that Jenkins's company was on the edge of business ruin and that Jenkins could not be trusted to deliver orders clearly disparaged his services. *See Federal Ins. Co. v. Cablevision Sys. Dev. Co.,* 637 F.Supp. 1568, 1581 (E.D.N.Y.1986) (finding allegations of similar statements within personal injury disparagement coverage of policy). Moreover, the Oklahoma Supreme Court stated that these disparaging statements were part of the evidence on which the business interference award was based. Therefore, the damage award was based on covered conduct. *See Benke,* 110 Wis.2d at 360–61, 329 N.W.2d 243. Thus, unless U.S. Fire prevails on its late notice claim, the insurer has a duty to indemnify.

U.S. Fire relies heavily on the case of *Nichols v. American Employers Ins. Co.,* 140 Wis.2d 743, 412 N.W.2d 547 (Ct.App. 1987), in arguing for the contrary result. *Nichols,* however, is inapposite. *Nichols* was a duty to defend case that did not involve the situation present here, where there is some evidence that some covered conduct was the basis for the damage award. *Benke,* 110 Wis.2d at 360–61, 329 N.W.2d 243.

## C. Was U.S. Fire relieved of duties to defend and indemnify because of alleged late notice?

U.S. Fire makes an additional argument as to why it owed Green Bay no duty to defend and why it presently owes no duty to indemnify. It asserts that Green Bay failed to comply with the terms of the policy requiring notice to the insurer and that the consequence of Green Bay's failure is that both U.S. Fire's duty to defend and its duty to indemnify were extinguished. The law in Wisconsin is that the insurer's right to receive timely notice of a claim so that it may timely investigate it is a condition precedent to the insurer's contractual duties to both defend and indemnify. *Gerrard Realty Corp. v. American States Ins. Co.*, 89 Wis.2d 130, 140, 277 N.W.2d 863 (1979). However, under Wisconsin law an insured may be barred from recovery based on late notice only upon a showing of prejudice to the insurer resulting from late notice. *Zenith Ins. Co. v. Employers Ins.*, 141 F.3d 300, 307 (7th Cir.1998). The same principle applies to the duty to defend. *See Bradley*, 984 F.Supp. 1193 (both parties and court assumed that insurer would have been excused from duty to defend if notice was both untimely and prejudicial). Thus, if there is both late notice and prejudice an insurer need not defend nor indemnify.[3]

Under the policy three subsections define Green Bay's duties with respect to notice. Under subsection E(1) of the policy as originally written the insured must notify U.S. Fire as soon as practicable of an " 'occurrence' which may result in a claim" under the policy. (Conway Aff., Ex. 9.) However, the parties modified this section by adding an endorsement that Green Bay was not deemed to have knowledge of such an occurrence until the insured's insurance manager "is advised of such an occurrence." *Id.* Under subsection E(2) a duty to notify U.S. Fire is imposed on the insured if a claim or suit is brought that is "reasonably likely to involve this policy." *Id.* And under subsection E(3) the insured must forward legal documents received in connection with "the claim or a 'suit.' " *Id.*

In addition, by operation of law the policy includes the terms of Wisconsin Statutes §§ 631.81(1) and 632.26(2). *Leverence v. United States Fidelity & Guaranty*, 158 Wis.2d 64, 74 n. 2, 462 N.W.2d 218 (Ct.App.1990). Section 631.81 states:

> Provided notice or proof of loss is furnished as soon as reasonably possible and within one year after the time it was required by the policy, failure to furnish such notice or proof within the time required by the policy does not invalidate or reduce a claim unless the insurer is prejudiced thereby and it was reasonably possible to meet the time limit.

Section 632.26(2) provides:

> **(2) Effect of failure to give notice.** Failure to give notice as required by the policy [or as soon as reasonably possible] does not bar liability under the policy if the insurer was not prejudiced by the failure, but the risk of nonpersuasion

---

3. Relying on several California cases (*Comunale v. Traders & General Insurance Co.*, 116 Cal.App.2d 198, 253 P.2d 495, 499 (1953), and *Shell Oil Co. v. Winterthur Swiss Insurance Co.*, 12 Cal.App.4th 715, 15 Cal.Rptr.2d 815, 840 (1993)), Green Bay argues that U.S. Fire denied that Jenkins's claim was covered by the policy and therefore waived its right to object to late notice. Green Bay's waiver theory is based on the argument that if U.S. Fire was going to deny coverage anyway, then earlier notice would only have meant earlier denial. However, in the present case I cannot find any documents in the record supporting Green Bay's assertion that when U.S. Fire first learned of Jenkins's suit it denied coverage for reasons other than late notice. U.S. Fire states that it acknowledged coverage of the defamation award rendered by the trial court and did not deny that the underlying claim was a covered occurrence until after the Oklahoma Court of Appeals reversed the decision of the trial court. In addition, I am aware of no Wisconsin authority in support of the concept of waiver as outlined in the California cases. Thus, I reject Green Bay's waiver argument.

is upon the person claiming there was no prejudice.

Although the question of whether U.S. Fire had a duty to defend is one of law, in the present case the answer turns on whether notice was timely and, if not, on whether the untimely notice was prejudicial. Generally, the determination of prejudice regarding untimely notice is a question of fact for the trier of fact. *See City of Edgerton v. General Cas. Co.,* 172 Wis.2d 518, 556–57, 493 N.W.2d 768 (Ct. App.1992), *rev'd on other grounds,* 184 Wis.2d 750, 517 N.W.2d 463 (1994). The question of whether notice was timely may also be one for the trier of fact depending on whether conflicting factual evidence is presented. In the present case I address the issues of notice and prejudice in the context of U.S. Fire's summary judgment motion. Whether summary judgment may be granted is to be determined by well-settled summary judgment methodology. *Id.* at 558, 493 N.W.2d 768. If there are genuine issues of material fact, either as to whether Green Bay failed to comply with the notice provisions of the policy or as to whether such failure was prejudicial to U.S. Fire, I must deny the motion.

### 1. Subsection E(1)

Under E(1) Green Bay was required to give notice of an "occurrence" that might result in a claim under the policy. Pursuant to the endorsement Green Bay was not deemed to have knowledge of such an occurrence until its insurance manager was advised of it. During the relevant time period the persons who served as Green Bay's insurance manager were Robert A. Vanderheyden and Linda Robertson. Both testified that they were never told about the counterclaim or about the occurrence giving rise to it, and that therefore they never advised either of Green Bay's insurance carriers of such occurrence. Fred Wakeman, Green Bay's chief financial officer, corroborated that he never told Vanderheyden or Robertson about the counterclaim. This evidence is, at a minimum, a sufficient basis for denying summary judgment on the issue of whether Green Bay violated the notice provisions of E(1).

### 2. Subsection E(2)

Subsection E(2) requires written notice of a claim made or a suit brought that is "reasonably likely to involve this policy." The phrase, "reasonably likely to involve this policy," creates an objective standard of reasonableness for determining when notice is required.

U.S. Fire presents evidence suggesting that there were various indicators in the Oklahoma litigation alerting Green Bay that Jenkins's counterclaim was reasonably likely to involve the U.S. Fire policy. U.S. Fire points out that Green Bay knew that Jenkins's jury demand would be in excess of $4,500,000 plus punitive damages, an amount which would involve the excess policy; that Jenkins was demanding over $4,000,000 to settle the case; and that the opposing parties' experts valued the claim at a much higher figure than Green Bay did.

Green Bay presents evidence that throughout the course of the underlying litigation all of its attorneys who were familiar with the case concluded that Jenkins's counterclaim was not reasonably likely to involve U.S. Fire's policy. Green Bay's counsel advised that the counterclaim had little merit, that it was brought as a defensive tactic, and that it was worth "no more than $100,000." (Wrenn Aff. ¶ 4.) Thus, Green Bay assessed the value of the counterclaims at less than the $250,-000.

The evidence in the record, therefore, raises a genuine issue of material fact as to whether the counterclaim was reasonably likely to involve the U.S. Fire policy. I cannot grant U.S. Fire's motion for summary judgment if a reasonable factfinder could decide that the claim was not reasonably likely to involve the policy. Green Bay has presented sufficient evidence to withstand summary judgment.

1002

### 3. Subsection E(3)

Under subsection E(3), Green Bay was required to immediately send U.S. Fire copies of legal documents received in connection with "the claim or a 'suit.'" The parties disagree as to whether the "reasonably likely to involve this policy" language in subsection E(2) should be read as modifying the phrase "the claim or a 'suit.'" The parties argue about the meaning of the use of the word "the" before "claim" and "a" before "suit."

For several reasons I think that the better construction of E(3) is to read the "reasonably likely" language in E(2) as modifying the phrase, "the claim or a 'suit.'" First, the language of the policy is inartfully drafted and ambiguous. If policy language is ambiguous or obscure the language should be construed against the insurance company that drafted the policy. *Maas by Grant v. Ziegler,* 172 Wis.2d 70, 79, 492 N.W.2d 621 (1992). Second, it would be inconsistent with other provisions in the policy to construe E(3) as requiring notice of claims or suits unrelated to the policy. Such a construction would render the "reasonably likely" limitation in E(2) meaningless. Further, "suit" is defined in the policy as one involving "damages to which this insurance applies," thus reinforcing the idea that the policy is concerned only with suits that implicate it.

So construed, E(3) raises the same issue as E(2): whether Jenkins's counterclaim was "reasonably likely" to trigger coverage under the policy so as to require Green Bay to comply with the notice requirement. As previously discussed, this is an issue for trial.

### 4. Prejudice

█ Wis. Stats. §§ 631.81(1) and 632.26(2) are incorporated by law into all Wisconsin insurance policies. These statutes preclude an insurer from barring an insured's claim based on late notice in the absence of prejudice. U.S. Fire presents evidence that Green Bay's failure to give notice was prejudicial because U.S. Fire was deprived of the opportunity to independently assess Jenkins's claim, to investigate it and possibly to settle it. In contrast, Green Bay points to testimony that U.S. Fire, as an excess insurer, would not likely have become involved in this case even with notice and therefore suffered no prejudice. The evidence in the record is conflicting, thus the case cannot be resolved on summary judgment. The question of prejudice involves genuine issues of material fact that must be resolved at trial.

### IV. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that U.S. Fire's motion for summary judgment is **DENIED.**

Further, even though Green Bay has not filed a cross-motion for summary judgment, as set forth above several matters of law have been determined in Green Bay's favor and should not linger in the case any longer. They are ripe for partial summary judgment. *See* Fed.R.Civ.P. 56(d) (allowing partial summary judgment); *Spitz v. United States,* 432 F.Supp. 148, 150 (E.D.Wis.1977) ("Although the plaintiffs have not moved for summary judgment ... a court may grant summary judgment to a nonmoving party when it appears from the record that there is no factual dispute and the nonmovant is entitled to summary judgment as a matter of law.").

**THEREFORE, IT IS ORDERED** that partial summary judgment is **GRANTED** to Green Bay on all components of the issues of duty to defend and duty to indemnify under the policy except the matters of notice and prejudice.

**FINALLY, IT IS ORDERED,** that a telephone conference will be held on **October 18, 1999, at 3:00 p.m.** for further scheduling in the case.